**Carson and Geraldine HAYES,
Plaintiffs–Appellees,**

v.

**The CITY OF MARYVILLE,
Defendant–Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Nov. 13, 1987.

Permission to Appeal Denied by
Supreme Court March 14, 1988.

Roy D. Crawford, Maryville, for defendant-appellant.

David T. Black, Maryville, for plaintiffs-appellees.

## OPINION

ANDERSON, Judge.

The Defendant-Appellant, City of Maryville ("Maryville"), appeals from a judgment for $105,389.83 in favor of Plaintiffs–Appellees, Carson and Geraldine Hayes ("Hayes"), in an inverse condemnation case arising out of public improvements to U.S. Highway 411 in Blount County, Tennessee.

The trial court, in overruling motions for summary judgment and directed verdict, held that it was a jury question whether Maryville's construction of a median strip in U.S. Highway 411, which converted the highway from two-way to one-way in front of Hayes's property, was a loss or serious impairment of the right of access sufficient to amount to a taking of a property right. The jury found damages of $61,000.00—$59,000.00 for the loss of access, and $2,000.00 for water runoff damage caused by the increased grade of the highway following the improvements. The trial court awarded an additional $44,389.83 in attorney fees, costs, and interest.

Maryville asserts on appeal that its construction of a median strip in the street abutting Hayes' property is a valid governmental exercise of police power rather than a taking of the property right of access. It further argues that Hayes's claim for damage due to water runoff is barred by the statute of limitations. The pertinent facts are as follows:

Hayes owns a parcel of land on the southeast side of U.S. Highway 411 within the corporate limits of the City of Maryville. The land fronts 161.5 feet on the highway and is improved with a concrete block building. Hayes had operated a used car business, known as 411 Auto Sales, on the property. U.S. Highway 411 is also a state highway, and prior to construction of the public improvement in this area in 1982, it was a two-lane highway at this location. The property is located approximately 350 feet south of the highway's intersection with Foothills Drive—one of the ten busiest intersections in Blount County—and 1500–2000 feet from Foothills Mall, a large new shopping center that is the heart of Maryville's retail area.

In conjunction with the development of the Foothills Mall retail area, Maryville "initiated major road and traffic improvements in the area," including improvements to Highway 411 in front of Hayes's property, and to the intersection immediately south. As part of the State-approved redesign, the highway was widened from two lanes to four, and a median was constructed between the northbound and southbound lanes from the Foothills Drive intersection southward approximately 400 feet, the median terminating approximately fifty-five feet south of Hayes's property.

Construction began in the fall of 1982. In the course of making the highway improvements, no land was acquired or taken from Hayes; all the improvements were accomplished within the State's previously-existing right-of-way. Because of the re-grading of the highway as part of the improvements, Hayes's property suffered erosion damage caused by increased water runoff. The proof shows, however, that the damage was temporary; the City corrected the problem by installing riprap in the affected area.

Prior to the construction of the improvement, Hayes had two driveways that provided access to Highway 411 in both directions, north and south. The driveways were entirely upon Hayes's property, were not within the right-of-way, and were not affected or changed by the improvements. The effect of constructing the median strip has been to create one-way lanes of traffic in front of Hayes's property. Immediate access to Hayes's property is from the northbound lanes of the highway; access from the southbound lanes is blocked by the median.

The proof conflicted concerning possible access to and from the southbound lanes, now separated from the property by the median. One witness testified that U-turns could be made at the south end of the median—55 feet from Hayes's property—and from the double left turn lanes at the intersection at least 400 feet to the north of Hayes's property. Another witness testified that such U-turns could not be made

safely or lawfully. Still another witness stated that one could leave the property and reach the southbound lanes by proceeding a quarter mile to the north and making a lawful turn at a median cut into the southbound lanes, and that to enter the property from the southbound lanes, one would have to go a half-mile south to a public road before turning into the northbound lanes. Hayes said that one would have to go four-tenths of a mile to the north before being able to turn from the northbound lanes into the southbound lanes, and that one would have to drive three-tenths of a mile south in order to turn from the southbound into the northbound lanes.

The proof was undisputed that the median had been constructed to prevent traffic accidents. Motorist safety was the paramount consideration in constructing the median to prevent uncontrolled turning across the busy highway close to the intersection.

The trial court overruled a motion for summary judgment and a motion for directed verdict, holding that the question whether access had been impaired sufficiently to constitute a taking was a jury question. We reverse the trial court and remand.

The prevailing view noted in Vol. 2A, Nichols, *The Law of Eminent Domain*, Section 6.37[4], at 6–306 (3d. Rev.Ed.1987), is that

[i]nterference with passage along a public way under an exercise of the police power is, of course, not compensable. Thus, the damage to an abutter is *damnum absque injuria* where traffic is diverted by ... the installation of a median strip ...

Accordingly, the majority rule is that any damages which result from the governing authorities' valid exercise of their police power in constructing or altering median strips which results in a change or diversion of traffic flow is non-compensable.

In *Ambrose v. City of Knoxville*, the issue was whether the City's changing a street from two-way to one-way was a compensable "taking" of the property right of

access. In deciding that there was no such taking, this Court said:

It is unnecessary for this Court to address each of the issues raised by the Appellant as each issue is based upon the premise that the City's conversion of Dale Avenue from a two-way to a one-way street constituted an illegal taking of the plaintiff's property. We hold that the changing of the traffic flow from two-way to one-way, in and of itself, does not give plaintiff an action for damages and affirm the judgment of the trial court.

728 S.W.2d 338, 339 (Tenn.App.1987).

In *City of Memphis v. Hood*, the Supreme Court faced the question whether the fact finder, in calculating incidental damages, could consider the fact that by reason of the installation of a median strip, traffic in front of the owners' property was to be changed from two-way traffic to one-way traffic. The *Hood* Court decided that the traffic change could not be considered, stating that

Of course, the property owners fronting upon a public thoroughfare have a right to free and convenient access thereto. This right of ingress and egress attaches to the land. It is a property right, as complete as ownership of the land itself. But when we come to damages claimed by reason of the change of the flow of traffic, making a street a four-lane highway or diverting the traffic one way or the other, this comes from the exercise of the police power of the governing parties and such damages as result to one are non-compensable, as they are an incidental right resulting from a lawful act.

208 Tenn. 319, 324, 345 S.W.2d 887, 889 (1961).

In the case at bar, the median strip and other highway improvements were constructed within the right-of-way. No land was taken from Hayes. Hayes's driveway entrances to Highway 411 remain undisturbed and unchanged, and access to the northbound lanes of traffic remains unchanged, except that there are now two northbound lanes where formerly there

was only one. Only southbound traffic attempting to enter or leave Hayes's premises will be affected by a route more circuitous than before.

We do not believe that impairment of access resulting from changing the traffic flow from two-way to one-way traffic by construction of a median strip in front of abutting property amounts to a taking. As this Court stated in *Ambrose,*

> [w]e are not unmindful of previous decisions that have held an inconvenient ingress and egress to the property owner is not a bar to the plaintiff's claim, but rather a material factor in the court's determination of damages. *See, Stokely v. Southern Railway Company,* 57 Tenn.App. 271, 418 S.W.2d 255 (1967); *Brookside Mills, Inc. v. Moulton,* 55 Tenn.App. 643, 404 S.W.2d 258 (1965); *Knox County v. Lemarr,* 20 Tenn.App. 258, 97 S.W.2d 659 (1936); *Shelby County v. Dodson,* 13 Tenn.App. 392 (1930). However, in none of the above was a court confronted with a plaintiff who claims relief for the conversion of a two-way street to a one-way street and still has a means of ingress and egress, albeit a circuitous one. In essence, the plaintiff's claim is based upon the lawful diversion of traffic. Consequently, there has not been an illegal taking of the plaintiff's right of ingress and egress to his property.

728 S.W.2d at 340.

The parties do not dispute that Hayes has retained access to the property, and under the law in Tennessee that is the determinative fact that precludes judgment for Hayes. We think, therefore, that Defendant's motion for summary judgment should have been granted. The proof is clear that there was no genuine issue as to any material fact, and that Defendant was thus entitled to judgment as a matter of law on the question whether the City's impairment of Hayes's access amounted to a taking. Rule 56.03, Tennessee Rules of Civil Procedure (1986); *Price v. Mercury Supply Co., Inc.,* 682 S.W.2d 924, 929–930 (Tenn.App.1984).

■ The issue of the damage to the Hayes's property caused by increased water runoff from the highway improvement, however, is an issue altogether distinct from the issue created by the construction of the median strip. The trial court correctly allowed the relation back of Hayes's amendment to the original complaint. Rule 15.03 of the Tennessee Rules of Civil Procedure[1]. The City insists, however, that had the motion for summary judgment been granted, "then the plaintiffs would have had no complaint to amend, the saving provision of Rule 15.03 would have been unavailable, and the claim for channelling of water would have been barred by the one-year statute." We disagree. The Tennessee Supreme Court has made clear that "[n]otice is the critical element involved in determining whether amendments to pleadings relate back." *Floyd v. Rentrop,* 675 S.W.2d 165, 168 (1984). The City does not dispute that the amended claim arose out of the same occurrence— the highway improvement project—set forth in the original complaint, and it is "clear that if the [rule's] conditions are met, the effect of Rule 15.03 is to avoid the impact of the statute of limitations." *Id.,* at 168.

■ We must, however, reverse the trial court's decision approving the jury's verdict for Hayes in the amount of $2,000.00 for the water damage to the property. Although Hayes was proceeding at trial on a

---

1. **15.03. Relation Back of Amendments.—** Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom the claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a misnomer or other similar mistake concerning the identity of the proper party, the action would have been brought against him. Except as above specified, nothing in this rule shall be construed to extend any period of limitations governing the time in which any action may be brought.

theory of inverse condemnation, we think the claim for water damage should have been brought on a tort theory of temporary nuisance.

 A nuisance is anything that annoys or disturbs the free use of one's property, or that renders its ordinary use or physical occupation uncomfortable. *Pate v. City of Martin,* 614 S.W.2d 46, 47 (Tenn. 1981); *Anthony v. Construction Products, Inc.,* 677 S.W.2d 4, 7 (Tenn.App.1984). A temporary nuisance is one that can be corrected by the expenditure of labor or money. *Pate,* 614 S.W.2d at 48; *Anthony,* 677 S.W.2d at 7. The water runoff obviously annoyed or disturbed the free use of Hayes's property, and the problem was corrected by the expenditure of labor or money. Thus, it seems clear that Hayes's claim for water damage to the property is a claim for temporary nuisance. However, because the claim is against a municipality of the State of Tennessee, it must be adjudicated under the provisions of the Tennessee Governmental Tort Liability Act, T.C.A. §§ 29–20–101, et seq. (1980 and Supp.1987).

Because the Act confers exclusive jurisdiction on the trial court sitting without a jury, we must reverse the water damage award, and remand to the trial court for the water damage liability issue to be tried by the Circuit Judge, without the intervention of a jury. T.C.A. § 29–20–307 (1980). We make no judgment on the merits of the factual issues determined by the jury in the original trial. We merely note that Hayes has made out a claim under the Act, and that the amendment adding the claim for water damage to the original complaint relates back under Rule 15.03, as discussed above. We therefore remand the water damage issue so that Hayes can pursue that claim as one of temporary nuisance under the provisions of the Tennessee Governmental Tort Liability Act.

Because we have reversed both portions of the jury's damage award to Hayes, we need not review the trial court's award of attorney fees, costs, and compounded interest on that judgment, since those awards stand or fall with the jury verdict upon which they are based. For the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion. Costs of this appeal are taxed to the Appellees.

SANDERS, P.J., and FRANKS, J., concur.