IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 3, 2001 Session

## JANICE SADLER, d/b/a XANADU VIDEO v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission**
**No. 303688**

_____

**No. M2000-01103-COA-R3-CV - Filed March 13, 2001**

_____

The owner of a business filed a claim in the Tennessee Claims Commission for the loss of the business caused by a construction project that temporarily hindered ingress and egress to the claimant's location. The Claims Commissioner awarded the claimant the value of her business after finding that the State had negligently prolonged the construction project and had created a temporary nuisance. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission**
**Reversed and Dismissed**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General and Michael J. Fahey, II, Assistant Attorney General, for the appellee, State of Tennessee.

H. Tom Kittrell, Jr. and Eddie R. Davidson, Nashville, Tennessee, for the appellee, Janice Sadler.

**OPINION**

**I.**

The claimant purchased a video rental business in 1990 for $58,000.00 and moved it to Bellevue on the south side of Highway 70, just one lot west of the Old Hickory Boulevard intersection. In 1991, the State Department of Transportation contracted with a private company to improve the intersection between Highway 70 and Old Hickory Boulevard, as well as approximately three miles of Old Hickory Boulevard, running north of the intersection. The project included changes to approximately 300 feet of Highway 70 running westward from Old Hickory Boulevard past the claimant's video store. So, for a three month period in 1991 the work on the street made it

more difficult for automobile traffic to enter and exit the claimant's property. The claimant's business declined dramatically.

In January of 1994, the claimant filed a pleading with the Division of Claims Administration alleging that because of the State's negligence, inefficiency, and improper planning the claimant was forced out of business in 1992. The total demand amounted to $152,395.80. The Division of Claims Administration transferred the cause to the Claims Commission pursuant to Tenn. Code Ann. § 9-8-402(c). After the State joined issue on the negligence claim and raised the one year statute of limitations for a "taking" in inverse condemnation, the claimant amended her claim to allege that the State had created a temporary nuisance for the three months the construction was underway. After a hearing the Claims Commissioner found (1) that the State was negligent in failing to implement any system of traffic control around the barriers placed in the street and in allowing the condition to exist for an unreasonable length of time, and (2) that the State had created a temporary nuisance that interfered with the claimant's use and enjoyment of her property. The Commissioner awarded the claimant a judgment for $275,000.00.

## II.
### GENERAL RULES OF LIABILITY

The Tennessee Claims Commission has the power to order the State to compensate claimants for a host of causes. *See* Tenn. Code Ann. § 9-8-307. Pertinent to this action are the following:

> (B) Nuisances created or maintained;
> . . .
> (I) Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by the department of transportation as being on the state system of highways or the state system of interstate highways.

Tenn. Code Ann. § 9-8-307(a)(1)(B) and (a)(1)(I).

The Act also provides that liability in tort shall be based on the traditional tort concepts of duty and a reasonably prudent person's standard of care, Tenn. Code Ann. § 9-8-307(c). And the State may assert any and all available defenses to the claim, Tenn. Code Ann. § 9-8-403(f). In our opinion, the statutory scheme makes the State liable for the ordinary negligence of its employees but it also preserves the defenses that are unique to the State, in addition to traditional defenses an individual would enjoy.

One defense unique to the State is the one that arises from the proper exercise of its police powers. As our Supreme Court said in *City of Memphis v. Hood*, 345 S.W.2d 887 (Tenn. 1961), "No one has a vested right to be protected against consequential injuries arising from a proper exercise

of public powers." 345 S.W.2d at 888 (quoting from *Cooley's Constitutional Limitations).* In *Hood,* the taking of part of a restaurant property and the change in the flow of traffic in the adjacent street had caused the restaurant to close. But the Supreme Court said:

> Of course, the property owners fronting upon a public thoroughfare have a right to free and convenient access thereto. This right of ingress and egress attaches to the land. It is a property right, as complete as ownership of the land itself. But when we come to damages claimed by reason of the change of the flow of traffic, making a street a four-lane highway or diverting the traffic one way or the other, this comes from the exercise of the police power of the governing parties and such damages as result to one are non-compensable, as they are an incidental right resulting from a lawful act.

345 S.W.2d at 889.

We have consistently followed this reasoning in our subsequent cases. In *Ambrose v. City of Knoxville,* 728 S.W.2d 338 (Tenn. Ct. App. 1987), the landowner complained that his ingress and egress had been impaired by converting the adjacent street from a two-way street to a one-way street. This court, however, held that the injury was non-compensable because a contrary result would "completely obstruct the building of roads and highways by the public authorities." 728 S.W.2d at 340.

In *Hayes v. City of Maryville,* 747 S.W.2d 346 (Tenn. Ct. App. 1987), the plaintiff's access to his property had been impaired by the construction of a concrete median between the north and south-bound lanes of traffic, cutting off the ability to turn into the plaintiff's property from the south-bound lanes. Holding that the city's lawful activities on its own property did not amount to a taking of the defendant's property (despite the altered access) the court said, "In essence the plaintiff's claim is based on the lawful division of traffic. Consequently, there has not been an illegal taking of the plaintiff's right of ingress and egress to his property." 747 S.W.2d at 349 (quoting from *Ambrose v. City of Knoxville).* The court also said:

> Accordingly, the majority rule is that any damages which result from the governing authorities' valid exercise of their police power in constructing or altering median strips which results in a change or diversion of traffic flow is non-compensable.

747 S.W.2d at 348.

If the permanent alteration of traffic patterns making access to private property more difficult is non-compensable, we fail to see how the plaintiff in this case can recover for the temporary inconvenience caused by the construction project.

# III.
## THE NUISANCE CLAIM

"A nuisance has been defined as anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Pate v. City of Martin*, 614 S.W.2d 46 at 47 (Tenn. 1981). A private nuisance is created where a landowner uses his property in such a manner as to unreasonably interfere with plaintiff's use or enjoyment of his own property. *Metropolitan Government of Nashville & Davidson County v. Counts*, 541 S.W.2d 133, 138 (Tenn. 1976). In contrast, a public nuisance is the interference with the public's use and enjoyment of a public place or with other common rights of the public. *Id.* The key element of any nuisance is the reasonableness of the defendant's conduct under the circumstances. *See* 58 Am. Jur. 2d *Nuisances* § 76.

Having held that the State has the right in the exercise of its public powers to permanently alter traffic patterns, *City of Memphis v. Hood*, 345 S.W.2d 887 (Tenn. 1961), we think it would be completely contradictory to hold that the State's activity in this case was unreasonable. The plaintiff argues that the barriers in the street could have been placed in better locations or that two eastbound lanes should have been converted to one eastbound lane and one turn lane, but those decisions are best left to the discretion of the public officials. There is no evidence that they abused their discretion in this case.

# IV.
## NEGLIGENCE

The commissioner found that the State's negligence unreasonably prolonged the construction on Highway 70. In his order, the commissioner only referred to the State's failure to implement any system of traffic control around the barriers placed adjacent to the entrance to the claimant's property. In his oral findings from the bench, the commissioner referred to the State's failure to discover the depth of a telephone conduit at the intersection of Highway 70 and Old Hickory Boulevard. He also repeated the reference to traffic control and the unreasonable delay.

A common-law negligence claim must contain the following five elements: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant breaching that duty, (3) an injury or loss to the plaintiff, (4) causation in fact, and (5) proximate or legal cause. *Waste Management, Inc. v. South Central Bell*, 15 S.W.3d 425 (Tenn. Ct. App. 1997). The violation of a duty must be a "necessary antecedent" to an injury to be considered a cause in fact of the injury. *Id.* at 432.

Two events involving buried telephone lines were implicated in this case. The first involved a debate among state engineers about whether a telephone line conduit had to be moved as a part of the project. But that dispute had been resolved ten months before the construction began on the street adjacent to the claimant's property. Therefore, that dispute and the delay it caused was not the cause in fact of any lost time when the work west of the Old Hickory intersection was in progress.

The second event involving a telephone line occurred when in the course of the work the contractor broke a water main and a telephone cable. The cable turned out to be a dead line, and the record does not show how the State could have prevented what happened or what effect it had on the project. Therefore, there is no evidence of a breach of duty with respect to the telephone lines, nor is there evidence that whatever happened with the telephone lines was the cause in fact of any delay in the construction on Highway 70.

Assuming that the State had a duty to see that the project was completed in the shortest possible time, there is no evidence in the record that allowing the contractor to spend three months in completing the work on Highway 70 breached that duty. The State project administrator testified that the three month period was what had been expected for that portion of the work. That evidence is not contradicted anywhere in the record. Therefore, the evidence preponderates against a finding that the interference with the claimant's ingress and egress was unreasonably prolonged.

The final basis for the commissioner's finding of negligence was the State's failure to address the flow of traffic through the construction area. In particular the commissioner criticized the State's decision to keep two open eastbound lanes rather than one open lane and a left turn lane at Old Hickory Boulevard. But, there is no proof that a left turn lane would have solved the problem of traffic congestion on Highway 70. There is no proof that anything in particular would have reduced the congestion. Therefore, we cannot find how the State breached a duty to the claimant in its management of the traffic around the construction site.

The judgment of the Claims Commission is reversed, and the claim is dismissed. Tax the costs on appeal to the claimant.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.