IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2002 Session

## MARCHELLA ANN RICHARDSON v. TERRY STACEY

**A Direct Appeal from the Chancery Court for Rutherford County**
**No. OOMI-1369     The Honorable Robert E. Corlew, III, Judge**

---

**No. M2001-02167-COA-R3-CV - Filed August 13, 2002**

---

Plaintiff, landowner, sued defendant, adjoining landowner, to enjoin him from trespassing on her land, committing a nuisance, and for damages. Plaintiff secured a temporary restraining order, and after a nonjury trial, plaintiff was granted injunctive relief in several particulars and was awarded compensatory and punitive damages. Defendant appeals. We modify in part and affirm as modified.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Modified in Part, and Affirmed as Modified**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBYLILLARD, J., joined.

William Kennerly Burger, Murfreesboro, For Appellant, Terry Stacey

Jeff Reed, Murfreesboro, For Appellee, Marchella Ann Richardson

### OPINION

Plaintiff, Marchella Ann Richardson, sued defendant, Terry Stacey, seeking injunctive relief and damages. The complaint alleges that the parties are adjoining landowners. Plaintiff owns a parcel of 49.95 acres, and defendant owns a parcel of 15.16 acres. Both parties have residences on the property, and plaintiff alleges that she keeps a number of cattle and horses on her property and has posted "No Trespassing" signs on her property. The complaint avers that notwithstanding the "No Trespassing" signs and personal demands and complaints from the plaintiff, the defendant has repeatedly trespassed upon plaintiff's property and has also allowed invitees to do the same. Plaintiff avers that defendant engaged in illegal hunting activity on his property and that in the course of the hunting, he and his invitees trespassed on her property. The complaint alleges that on a dove hunt conducted by defendant on September 1, 2000, there were numerous hunters who discharged firearms toward and over the plaintiff's property, trespassed thereon, and that the shooting was so intense that plaintiff's phone lines and electrical lines were damaged, cutting off her

services. The complaint further avers that she had repeatedly told the defendant that he should not be trespassing on her property or discharging firearms toward her property, and notwithstanding this, she had bullet holes in her residence. She alleges that defendant continues to trespass on her property and has intentionally and willfully acted against plaintiff's interest.

The complaint avers that defendant has willfully and intentionally removed fencing, had located deer stands on the fence line between the parties' property where he could shoot onto or toward plaintiff's property when hunting and that his activities deny the plaintiff the peaceful use and enjoyment of her property and has also caused damage to her property.

Plaintiff seeks to enjoin the defendant from trespassing upon plaintiff's property, discharging firearms or other projectiles toward, above, on, or in the direction of plaintiff's property, and to prohibit hunting in any manner that would infringe upon plaintiff's use of her property. The complaint also seeks an injunction to enjoin the defendant from threatening plaintiff in any manner and seeks an award of damages both compensatory and punitive.

A temporary restraining order was issued enjoining the defendant as prayed by plaintiff. Defendant's answer to the complaint admits that the parties are neighbors and admits that he had been on plaintiff's land in the past but that when plaintiff requested that he not do so again, he has never gone back or trespassed in any manner. Defendant denies that he had caused any damage to plaintiff's property and denies that he or his guests have crossed onto plaintiff's property. He also denies that he caused any damages to plaintiff or her property.

A nonjury trial was held on August 6, 2001. Plaintiff testified that she and the defendant own adjoining parcels of land, and that she purchased her property in 1995. She stated that the first incident with the defendant occurred in September of 1997. Defendant had a dove hunt on his property which apparently spilled over onto the property of another neighbor, Mr. Baker. She alleged that in February of 1998, defendant was hunting on her property and, when his truck broke down, he asked one of plaintiff's employee to help him repair the truck. She stated that in September of 1998, defendant had a pay-hunt on his property, and she called the sheriff. The sheriff advised the defendant to get off of plaintiff's property. She testified that she has "No Trespassing" and "No Hunting" signs posted on her property. She also testified that when she started putting improvements on her property, she told the defendant that there would be no more hunting on her property at all. On or about September 20, 1999, she noticed the soffit on the end of her barn appeared to have been shot off. When she discussed this with the defendant, he stated that he did not hunt with a rifle, and she noted that after that time she saw him going to his tree stand on his property with a rifle in his hand. She testified that the defendant has five tree stands on the fence line between their properties, and they are located on the very narrow strip of land that the defendant uses for hunting.

She further testified that on the narrow part of the hunting strip, there was a gate there before she bought the farm. She put a chain with a lock on the gate, but she discovered that the chain had

been cut and a new pad lock had been replaced by the defendant. She further testified that she had seen the defendant four-wheeling on her property only one time.

She testified that on September 1, 2000, the defendant had his "regular" dove hunt which started at 12 noon. About three o'clock, she noticed that she had no electricity. Also, when she tried to use the telephone, she found she had no service. She determined that everyone else around her had electricity and telephone service, so she went to the dove hunting area and told the defendant that she thought he had shot the power lines down. At that time, she counted thirty two hunters on the defendant's property, and some these hunters were on her property. She called the police on that incident, and after the hunt she found over six hundred shot gun shells on her property. She testified that she never allowed any hunting on her property. She further testified that just prior to the trial of the case, three of her cats died from poisoning. She also had some vague statement about her walking horse that she contended had been shot. She also testified that when she asked the defendant to stop hunting on her property, he told her he could hunt wherever he wanted and that if game fell on her property, he had a right to go get it. In July, just prior to trial, she found an expended firework-type rocket on her property, and the defendant admitted that he had fired fireworks on July 4th for his family, and this rocket could have been one that he fired. Plaintiff also testified that she had not been able to use approximately ten acres of her property because of fear for her safety and the safety of her animals. She testified that she paid her nephew $25.00 to pick up shotgun shells on her land. She also expended money for repair of fences but did not have any figures for that amount.

Plaintiff also testified that since the court hearing on the temporary restraining order in October of 2000 until the time of trial, she does not know of any time that defendant has hunted on her property. The only problem she has had since the October hearing was finding the one expended firework rocket on her property after the 4th of July. She testified that she is seeking $5,000.00 in compensatory damages for "the mental anguish and grief in all that I've been through." She states that she is also seeking $5,000.00 punitive damages under the same rationale.

Alan York, a game warden for Rutherford County, testified that pursuant to a complaint made by the plaintiff, he inspected the defendant's field. His inspection revealed that the field was improperly baited and had been posted as a baited field. Under the regulations, it could not be hunted for ten days after it had been re-sewn or re-baited.

Janice Wittstruck testified that she is a neighbor of the parties residing at 618 Rocks Spring Road, Christiana, Tennessee. She testified that she has witnessed the defendant trespassing on the plaintiff's property during the past dove season. She stated that she saw three people on the plaintiff's property and that there were probably about twenty or so hunters altogether. She stated that there was a lot of shooting, and the noise was quite disturbing. She further testified that on occasion she had seen the defendant and his guests aiming through scopes with rifles and that generally they were a rowdy crowd.

For the defense, the defendant, Terry Stacey, testified that a little over three years ago the plaintiff asked him to stop coming on her property. He complied with this request and has not been

on her property since without her consent. He testified that he did not have a commercial hunting business but had friends and family over for dove hunts. He stated that he tried to tell everyone that hunted on his property that they were not to go on the plaintiff's property. In regard to the plaintiff's complaint about four-wheeling on her property, he stated that that was over three years ago when he had permission to be there. As to his truck breaking down on plaintiff's property, he stated that he also had her permission at that time, and he reiterated that when she told him to stop coming on her property, he complied with her request. He testified that before she asked him not to come on her property, she was "totally different neighbor." It was after he granted an easement across his property for her electric and phone lines that things changed. He further testified that he had complied with the temporary restraining order and has not hunted on his property in the back field since that time. He confirmed the testimony of the game warden concerning his field, and he complied with the game warden's instructions. He denied having any involvement whatsoever in the death of her cats and the injury to her horse. On cross-examination, he was questioned about the chain on the gate that he had replaced. He testified that when he bought the property in 1990, the gate was on the front of his property before it was moved.. He stated that because it was his gate, he thought that he could have a lock on the chain. He reiterated that when she originally had given him permission to hunt on her property, there was a tree stand on the property line between them. He stated that the last time he talked to the plaintiff, he told her that he had moved the tree stand. He further testified that he had visited some of the neighbors to have them sign a paper concerning the plaintiff's allegedly illegal septic tank, and that he had complained to the county authorities concerning this. He was further questioned concerning the fireworks on the 4th of July, and he admitted that he fired fireworks for his children and that one of them accidentally had landed on her property. With regard to the damage to the plaintiff's barn, he testified that she never stated when the damage occurred. He testified that he had never hunted "back there" and had never fired a "big gun then," and that he could not have been the one that caused such damage. He further stated after her request to stay off her property, he never went back to the property or trespassed in any manner. Defendant denied that he has caused any damage to the plaintiff's property and denied that he or his guests have fired across or onto plaintiff's property. He also denied that he caused any damage to plaintiff or her property.

On August 20, 2001, the court entered its order finding that a permanent injunction should issue and that both compensatory and punitive damages should be awarded. The order provides in pertinent part:

> With regard to the issue of damages, the Court finds that there is sufficient circumstantial evidence which preponderates in favor of the Plaintiff's compensatory damage claim of $5,000.00. The Court further finds that the Defendant Stacey's misconduct was done willfully and knowingly such that punitive damages should be awarded to the Plaintiff.
>
> The Court further held a bifurcated hearing on the issue of the amount of punitive damages, and additional proof was presented.

Upon presentation of additional proof, and an analysis of the factors to be considered in determining punitive damages, the Court determines that $1,500.00 is an appropriate amount of punitive damages. Accordingly,

It is HEREBY ORDERED, ADJUDGED AND DECREED:

1. A Permanent Injunction is hereby issued against Terry Stacey prohibiting:

a. the Defendant Terry Stacey or any of his guests from discharging firearms, firing guns, shooting arrows or any other projectiles towards, above, on, onto or in the direction of the Plaintiff's property; and

b. the Defendant Terry Stacey from trespassing on the Plaintiff's property, allowing his guests to do so, disassembling fences between the parties' properties, or retrieving game from the Plaintiff's property.

2. The Defendant Terry Stacey, and any of his guests, are hereby permanently enjoined from firing any weapons on his property except in a generally easterly direction presupposing that the owner of the adjoining property to the east gives Mr. Stacey permission to do so. Mr. Stacey is permanently enjoined from, or allowing his guests to, fire to the west or north of his property.

3. The Defendant Terry Stacey is hereby required to remove the tree stand encroaching on the boundary of the two parties' property.

4. The Defendant Terry Stacey is prohibited from threatening, intimidating, or coming within one hundred feet (100') of the Plaintiff, Marchella Ann Richardson.

5. The Plaintiff Marchella Ann Richardson is awarded compensatory damages against the Defendant Terry Stacey in the sum of $5,000.00.

6. The Court further finds it appropriate to award punitive damages to the Plaintiff against the Defendant Terry Stacey in that Terry Stacey's misconduct was committed knowingly.

7. Having conducted a bifurcated hearing on the issue of the amount of punitive damages, the Court awards the Plaintiff, Marchella Ann

-5-

Richardson, punitive damages, in addition to compensatory damages, against the Defendant Terry Stacey in the amount of $1,500.00. Accordingly, the total judgment awarded to the Plaintiff against the Defendant is $6,500.00.

8. The Court costs of this cause are assessed to Terry Stacey for which execution may issue.

The defendant has appealed and presents one issue for review as stated in his brief:

Does the preponderance of the evidence support the trial court finding that the Defendant/Appellant engaged in any conduct which justified injunctive relief, or an award of either compensatory or punitive damages?

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id.*; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

The summary of plaintiff's complaints against the defendant are his presence on her property without permission on one occasion with the use of his four-wheeler, his presence on her property without her permission on one occasion with his truck, damage to her barn allegedly caused by rifle shot, the death of three cats, injury to her horse, defendant and his guests' presence on her land while dove hunting, causing her electric power and telephone lines to be damaged, and the otherwise interference with the use and enjoyment of her property. These complaints constitute an action for trespass and for maintenance of a private nuisance. A private nuisance is created where a landowner uses his property in such a manner as to unreasonably interfere with plaintiff's use or enjoyment of his or her own property. *See Sadler v. State*, 56 S.W.3d 508, 511 (Tenn. Ct. App. 2001). A nuisance is "anything which annoys or disturbs the free use of one's property or which renders its ordinary use or physical occupation uncomfortable." *Zollinger v. Carter*, 837 S.W.2d 613, 615 (Tenn. Ct. App. 1992). We ascertain from a review of the record that there is absolutely no proof that the defendant was involved in any way with the death of the plaintiff's three cats or to the injury to the horse. Testimony as to the time element when these alleged injuries occurred to the plaintiff was not specific, nor was there any evidence that the defendant committed any acts of that nature. The record is void of any evidence of damage occurring to the plaintiff by virtue of the defendant's

trespassing with his four-wheeler or trespassing with his truck, each of which occurred only on one occasion. The plaintiff also contends that there was damage to her barn caused by rifle fire, but there is no indication in the proof as to when this occurred, and the conclusion by the plaintiff that the damage was from a rifle and also caused by the defendant is somewhat suspect.

The crux of the plaintiff's complaint is the September 2000 dove hunt when several of the defendant's invitees went on her property and also when her electricity and telephone service were interrupted because of the gun fire. There is no proof as to how long she was without these services, but apparently it was temporary.

The trial court awarded the plaintiff $5,000.00 compensatory damages which were prayed for in her complaint but made no specific findings as to what constituted the elements for the award.

A party seeking damages has the burden of proving them, but in tort cases the proof of damages need not be exact or mathematically precise. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999). The proof of damages must be as certain as the nature of the case permits and must enable the trier of fact to make a fair and reasonable assessment of the damages. *Id.* Damages may never be based on mere conjecture or speculation. However, uncertain or speculative damages are prohibited only when the existence, not the amount, of damages is uncertain. *Id.* The evidence required to support a claim for damages need only prove the amount of damages with reasonable certainty. *Id.*

A party subjected to a nuisance may be entitled to several types of damages which include the cost of restoring the plaintiff's property to its condition prior to the creation of the nuisance, personal damages, such as inconvenience and emotional distress, and injury to the use and enjoyment of the property. Such damages are not mutually exclusive. *Pryor v. Willoughby*, 36 S.W.3d 829 (Tenn. Ct. App. 2000).

In the case before us, there is very little, if any, proof of any real emotional distress on the part of the plaintiff. She did testify that she was unable to enjoy the full use of her property, but this apparently was for a very temporary period of time, considering her testimony lacks the length of time she suffered any such inconvenience. Plaintiff's proof simply does not show with reasonable certainty damages in the amount of $5,000.00. The plaintiff testified that she paid her nephew $25.00 to clean up shot gun shells and that she had some expense of an unknown amount for some additional wire and fencing. Primarily, the plaintiff was upset and discommoded by the dove hunt on September 1, 2000 and was without electricity and telephone service for a temporary period of time. We are sure she was disturbed by the shotgun fire in such close proximity to her house for this temporary period of time. However, this inconvenience and the stress shown in this record for that period of time does not rise to an award of $5,000.00. Based on the proof in the record, it appears that a nominal amount of compensatory damages would be warranted, and $500.00 would be a reasonable award. Therefore, the order of the trial court is modified to award $500.00 compensatory damages.

Concerning the question of punitive damages, such damages may be awarded only if the trier of fact finds that a defendant has acted either intentionally, fraudulently, maliciously, or recklessly. ***Hodges v. S. C. Toof & Co.***, 833 S.W.2d 896, 901 (Tenn. 1992). In ***Hodges***, the Court said:

> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. ***Cf.*** T.C.A. § 39-11-302(a) (1991)(criminal definition of "intentional"). a person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. ***See First Nat'l Bank v. Brooks Farms,*** 821 S.W.2d 925, 927 (Tenn. 1991). A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances. ***Cf.*** T.C.A. § 39-11-302(c) (1991) (criminal definition of "reckless").

***Id***. at 901.

In the instant case, the trial court found that the defendant, while he did not act fraudulently or maliciously, did intend to engage in the dove hunt and fire, along with his guests, the shotguns across her property so as to damage electric and telephone lines and in so doing was also acting recklessly within the definition set out above. The evidence does not preponderate against that finding. Moreover, the evidence introduced on the question of punitive damages indicated that the trial court considered the necessary elements as established in ***Hodges, supra,*** including the expense that the plaintiff had incurred in an attempt to seek relief as a result of defendant's conduct. The evidence does not preponderate against the trial court's finding that punitive damages in the amount of $1,500.00 is proper.

Concerning the injunctive relief granted, we do not disagree with the trial court that some injunctive relief is in order. However, we do observe that the injunction granted is somewhat over-broad. We have no quarrel with the injunction set out in the order in Paragraphs 1 a.. b., 3, and 4. However, the provisions of the Paragraph 2 exceed the bounds necessary to grant relief to the plaintiff. The defendant should not be prohibited from firing a weapon on his property, except to the extent that it is prohibited by the other paragraphs referred to above. Therefore, the injunction issued should be modified to eliminate the provisions of Paragraph 2 of the order.

Accordingly, the order of the trial court is modified to award the sum of $500.00 as compensatory damages, and the injunction issued is modified to eliminate the provisions of Paragraph 2 of the order. The order of the trial court is in all other respects affirmed. Costs of the

appeal are assessed to the appellant, Terry Stacey, and the case is remanded to the trial court for such further proceedings as may be necessary.

 

 

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.