IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 10, 2004 Session

## SUSAN CHARLES and JAMES CHARLES, v. RUTH LATHAM and RALPH LATHAM

**Direct Appeal from the Circuit Court for Blount County**
**No. E-17434     Hon. W. Dale Young, Circuit Judge**

---

**No. E2003-00852-COA-R3-CV - FILED AUGUST 25, 2004**

---

In a dispute over an easement, the Trial Court awarded damages to plaintiffs for interference with use of easement, nuisance and punitive damages. On appeal, we affirm the award of compensatory damages, but vacate the award of punitive damages and remand to assess punitive damages in accordance with *Hodges v. Toof & Co.,* 833.S.W.2d 896 (Tenn. 1992).

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

H. Allen Bray, Maryville, Tennessee, for Appellants.

Craig L. Garrett, Maryville, Tennessee, for Appellees.

### OPINION

In this action, the parties are adjoining property owners, and plaintiffs brought suit seeking damages for the defendants' denial of the use of their easement, threats and intimidation, damage to the right of way, and accumulating junk and waste materials "along the front and side borders" of the plaintiffs' property.

Following an evidentiary hearing, the Trial Court awarded compensatory damages to the plaintiffs in the amount of $17,400.00 for damage to and interference with the use of their

right of way easement, and further awarded plaintiffs compensatory damages in the amount of $17,00.00 for intentional harassment and nuisance, plus punitive damages in the amount of $25,000.00. The Trial Court required the plaintiffs to remove a disputed fence across the front of the boundary to their property, and permanently enjoined the defendants from harrassing the plaintiffs or interfering with their quiet and personal enjoyment of their property.

Defendants have appealed raising these issues:

1. The Trial Court should have sustained the Motion to Dismiss as to Defendant Appellant Ruth Latham.

2. The Trial Court erred in the award of punitive damages.

3. The proof at trial does not sustain unlawful conduct by Defendants denying use of the easement.

4. The proof at trial is insufficient to sustain a judgment for harassment and nuisance.

Our review in a non-jury case is *de novo* upon the record of the proceedings below, accompanied by a presumption of correctness of the lower court's facts and findings. Tenn. R. App. P. 13(d)*; Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The Trial Court's conclusions of law, however, are not afforded this deference. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996).

Appellants' first issue is that the Trial Court erred in denying their motion to dismiss Defendant Ruth Latham. The proof at trial was that Mrs. Latham co-owns the property with Ralph Latham as tenants by the entirety, and that she was aware of Mr. Latham's activities and the condition of the property. She occasionally visited the farm, but she had no active involvement in acts of nuisance or harassment of the plaintiffs.

After the dispute arose between the parties, Ralph Latham embarked upon a relentless campaign against the Charles. He set his grader blade on end and dug a trench in the middle of the portion of the right of way used only by the plaintiffs, and when Charles would attempt to repair and fill pot holes, Latham would remove the filling, and then built a speed bump 2 to 3 feet high on plaintiffs' part of the right of way. Charles attempted to reduce the severity of the bump by adding shale gravel to level it, but when he brought the shale in, Latham blocked him in the roadway and approached him with a club made from a 4-ft sledge hammer handle and said "you just can't get over the fact that this is not your driveway." Later, Latham scraped away the shale with his grader.

Latham spent many hours hauling items of junk and debris from all over his farm and deliberately positioning it along the fence in front of the Charles property, including such items as an old truck bed and cab, concrete, hog feeder, an old tractor tire, rusted out washing machine, tin cans, antifreeze jugs, and enormous amounts of scrap metal. A rusted 55 gallon drum lined with

concrete, estimated about 500 lbs. was dumped in Plaintiffs' field, and Latham hung a commode, toilet seat, old tin cans and antifreeze jugs from a tree in view of Plaintiffs' home.

Appellants contend that Mrs. Latham cannot be held liable, but they cite no legal authority for this position. Courts routinely hold that the failure to cite relevant authority in support of their argument as required by Tenn. R. App. P. 27(a)(7) constitutes a waiver of the issue. *Bean v. Bean,* 40 S.W.3d 52, 55 -56 (Tenn. Ct. App. 2000); *Wilhite v. Brownsville Concrete Co., Inc*., 798 S.W.2d 772, 775 (Tenn. Ct. App.1990). However, the Court may suspend the requirements or provisions of the rules in a given case. *Bean.*

In this jurisdiction, a landowner is not liable for a nuisance unless he or she has actual or construction knowledge of it, or it was created by his or her authority. *Grant v. Louisville & N.R. Co.,* 165 S.W. 963, 964 (Tenn. 1914). While *Grant* involves different facts, under the rule in *Grant* Mrs. Latham is liable because the evidence showed she did in fact have knowledge of Mr. Latham's actions and the conflicts with the plaintiffs. *See also,* 58 Am. Jur.II, Nuisances, § 117-119.

Moreover, a defendant may be liable by virtue of the status relationship to the property if the plaintiff proves co-ownership or operation of the property. *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1507 (6th Cir.1989); *Memphis Zane May Associates v. IBC Mfg. Co.,* 952 F. Supp. 541, 546 W. D. Tenn.1996); *Bennis v. Michigan,* 516 U.S. 442, 449, 116 S.Ct. 994, 999 (U.S. Mich.1996).

The case of *Schmidt v. Paul,* 554 S.W.2d 496 (Mo. Ct. App. 1977) involved facts similar to the circumstances in this case. In *Schmidt,* the evidence showed the wife did not engage in any activity causing damage to the plaintiffs' property. The Court found the law regarding the continuation and maintenance of a nuisance was applicable, and by virtue of the joint possession and ownership of the land, the wife was jointly liable with the husband for the nuisance created and maintained by him.

Mrs. Ruth Latham's testimony established that she knew about the junk piled along the fence in Plaintiffs' view, that she co-owned the property, and that she occasionally visited it. We find no error in the Trial Court's denying the Motion to Dismiss.

Defendants argue that the evidence does not establish that appellants denied plaintiffs' use of the easement.

An easement is a property interest that confers to the holder an enforceable legal right to some lawful use of the real property of another. *Fowler v. Wilbanks,* 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000); *Bradley v. McLeod,* 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998). The owner of the subservient estate has no legal right to interfere with an easement holder's enjoyment and use of the easement. *Cooper v. Polos,* 898 S.W.2d 237, 242 (Tenn. Ct. App. 1995).

The type of injury that may be sustained from a wrongful interference with the easement, includes injury to the land itself and diminution of the easement's holder's use and

enjoyment of his own property, or the use of the easement. *Rector v. Halliburton,* 2003 WL 535924, \*10 (Tenn. Ct. App. 2003), *citing, Expressway Assoc. II v. Friendly Ice Cream Corp.,* 590 A.2d 431, 433 (Conn. 1991).

Landowners are not permitted to use their land in any way they choose irrespective of the effect on other landowners. *Oakley v. Simmons*, 799 S.W.2d 669, 670-71 (Tenn. Ct. App. 1990). In this case, the items placed in a "strategic location"were rusted out old sheds, a truck cab, truck bed, refrigerator, commode, huge old rusted barrel, tractor tire, washing machine, old deteriorated equipment, cans, and miscellaneous unidentifiable junk and debris.[1] The evidence establishes junk was accumulated from all over the defendants' farm and intentionally dumped. Latham testified that it was to aggravate the plaintiffs and was an expression of his free speech to send the plaintiffs a message. Clearly, the digging up the right of way, building a speed break, and sabotaging the plaintiffs' efforts to repair the road was a blatant interference with their use and enjoyment of the right of way.

A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. *Caldwell v. Knox Concrete Products, Inc.,* 391 S.W.2d 5 (Tenn. Ct. App. 1964). It extends to everything that endangers health or life, offends the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property. *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn.1981); *Wilson v. Farmers Chem. Ass'n,* 444 S.W.2d 185, 187 (Tenn. Ct. App. 1969).

A private nuisance is created where a landowner uses his property in such a manner as to unreasonably interfere with plaintiff's use or enjoyment of his own property. *Metropolitan Gov't of Nashville & Davidson County v. Counts,* 541 S.W.2d 133, 138 (Tenn. 1976). "The key element of any nuisance is the reasonableness of the defendant's conduct under the circumstances." *Sadler v. State,* 56 S.W.3d 508, 511 (Tenn. Ct. App. 2001.) If the action is taken solely for the purpose of harassing the property owner, and is not a reasonable use of the property, it is a nuisance. *Id., citing, Reaver v. Martin Theatres of Florida*, 52 So.2d 682 (Fla.1951). The nuisance need not be placed on the plaintiff's property. It may consist of something located on the defendant's property or a use of one's property that has an effect upon the adjoining owner. *Williams v. Cross,* 65 S.W.2d 198, 201 (Tenn. Ct. App. 1932); *Pate v. City of Martin,* 614 S.W.2d 46 (Tenn. 1981) (citation and quotation marks omitted); The *Restatement (Second) of Torts* § 821F (1979); Also s*ee, Jenkins v. CSX Transportation, Inc.,* 906 S.W.2d 460, 462 (Tenn. Ct. App. 1995). Clearly, the defendant deliberately amassed the junk in a long stretch along the parties' border.[2]

---

[1]The Trial Court properly rejected out of hand defendant's claim that he placed these items there for the purposes of patching holes in his fence that borders plaintiffs' property.

[2]Plaintiffs offered evidence via video tape, where Latham appears gleefully and intensely laboring with his front end loader, carrying enormous amounts of junk and arranging it along the fence line. He occasionally dismounts and physically labors to shove large pieces of junk into a heap.

The evidence clearly preponderates in favor of the Trial Court's Judgment on the issue of compensatory damages.

Moreover, the evidence supports an award of punitive damages based upon the egregiousness of Latham's actions. However, whether the Trial Court has utilized the proper measure of damages is a question of law subject to *de novo* review, with no presumption of correctness. The amount of damages actually awarded is a question of fact, *Beaty v. McGraw,* 15 S.W.3d 819, 828 -829 (Tenn. Ct. App.1998).

*Hodges v. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992) is the leading case setting the parameters for punitive damages in this jurisdiction. The Opinion states:

> In Tennessee, therefore, a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly.
>
> A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. *Cf. T.C.A. § 39-11-302(a) (1991)* (criminal definition of "intentional"). . . . A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. . .
>
> Further, because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence. [FN 3] This higher standard of proof is appropriate given the twin purposes of punishment and deterrence: fairness requires that a defendant's wrong be clearly established before punishment, as such, is imposed; awarding punitive damages only in clearly appropriate cases better effects deterrence.
>
> FN3. Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.
>
> In a trial where punitive damages are sought, the court, upon motion of defendant, shall bifurcate the trial. During the first phase, the factfinder shall determine (1) liability for, and the amount of, compensatory damages and (2) liability for punitive damages in accordance with the standards announced above. During this phase, evidence of a defendant's financial affairs, financial condition, or net worth is not admissible.
>
> If the factfinder finds a defendant liable for punitive damages, the amount of such damages shall then be determined in an immediate, separate proceeding. During this second phase, the factfinder shall consider, to the extent relevant, at least the following:

(1) The defendant's financial affairs, financial condition, and net worth;

(2) The nature and reprehensibility of defendant's wrongdoing, for example

      (A) The impact of defendant's conduct on the plaintiff, or
      (B) The relationship of defendant to plaintiff;

(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5) The expense plaintiff has borne in the attempt to recover the losses;

(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;

(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

. . .

*Hodges* 901 -902.

Subsequent to *Hodges,* the Supreme Court held that the requirement of a trial court to make findings of fact and conclusions of law is essential in non-jury trials. *Culbreath v. First Tennessee Bank Nat'l Ass'n*, 44 S.W.3d 518, 528 (Tenn. 2001). Without a finding as to each of the relevant *Hodges* criteria, an appellate court cannot adequately review a punitive damages award. *Id. at 529.* The *Culbreath* Court found that the record amply supported the imposition of punitive damages, but because the findings did not address each of the *Hodges* factors separately they were insufficient to support the amount of damages, and the Court remanded the case for correct application of those factors. Leaving no doubt regarding its position, the Court said:

In order to 'clearly demonstrate a consideration of all relevant factors,' the court's findings of fact and conclusions of law should explicitly refer to each of the factors listed in *Hodges,* as well as to any other factors supporting the award of punitive

-6-

damages.

*Id. at 529. Accord, Kimery v. Unicoi Ins. Agency,* 2003 WL 21297314 (Tenn. Ct. App. 2003).

Appellants objected to the admission of evidence pertaining to their finances during the liability phase of trial. The Trial Court stated that it could keep the two issues separate but did not follow the procedure as set forth in *Hodges* and *Culbreath.* Accordingly, we conclude a remand is necessary to determine the amount of punitive damages, by making explicit findings on each of the factors listed in *Hodges* as required by *Culbreath,* and additional evidence may be offered on the issue.

We vacate the Judgement of punitive damages but affirm the Trial Court on all other issues, and remand for the Trial Court to establish punitive damages in accord with the requirements of *Hodges.*

The cost of the appeal is assessed to Ruth and Ralph Latham, and the cause remanded.

_____
HERSCHEL PICKENS FRANKS, P.J.