# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 21, 2017 Session

## CHARLES STINSON, ET AL. v. DAVID E. MENSEL, ET AL.

### Direct Appeal from the Chancery Court for Hickman County
#### No. 12-CV-4872      Deanna B. Johnson, Judge

_____

### No. M2016-00624-COA-R3-CV

_____

This appeal involves a dispute between landowners over an easement on Plaintiffs' property that allows the Defendants to use the easement for ingress and egress to their homes.  Plaintiffs filed suit alleging that the Defendants unlawfully bulldozed the easement, encroached onto Plaintiffs' property, and used threats and intimidation to prevent the Plaintiffs from coming on or using the non-exclusive easement.  Defendants counter-sued, alleging that the Plaintiffs were actually the ones engaging in a campaign of harassment, and that the Plaintiffs were preventing the Defendants from the peace and enjoyment of the easement, which they used as their driveway.  Following a bench trial, the trial court concluded that Plaintiffs were liable to Defendants for nuisance, intentional infliction of emotional distress, and invasion of privacy.  The trial court also enjoined the Plaintiffs from having any use of the easement.  Plaintiffs appealed.  We affirm in part, reverse in part, and partially vacate the injunction.  Specifically, we affirm the judgment of the trial court with respect to the nuisance claim, reverse the judgment of the trial court with respect to the intentional infliction of emotional distress and invasion of privacy claims, and vacate the permanent injunction against Plaintiffs to the extent that it prohibits them from the lawful use of their property.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part, Vacated in part, and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Edmund Covington Johnston, Franklin, Tennessee, for the appellants, Charles Stinson, and Glenda Stinson.

Allston Vander Horst, Centerville, Tennessee, for the appellees, David E. Mensel, Mary F. Mensel, Michael Sabol, and Christine Sabol.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

Appellants, Charles Stinson and his wife, Glenda Stinson (collectively "the Stinsons") initiated this litigation against their neighbors, Appellees, David E. Mensel and his wife Mary F. Mensel (collectively "the Mensels") and Michael Sabol and his wife, Christine Sabol (collectively "the Sabols") on October 25, 2012. The Stinsons own land in Hickman County, Tennessee and have a home on that land. The Stinsons' land is subject to an easement, which is a 50-foot non-exclusive easement for utilities and for ingress and egress to certain neighboring properties (the "Easement"). The deed attached to the Stinsons' complaint indicates that the Stinsons' property line is the center line of the Easement. The Mensels and the Sabols live on land accessed by the Easement and use a road built on the Easement as the driveway to their homes. This road/driveway within the Easement is known as Captain Spence Ridge Road. The Stinsons do not actually use Captain Spence Ridge Road as the driveway to their home. Captain Spence Ridge Road was built so that it is in the center of the Easement. The original width of Captain Spence Ridge Road was approximately eight feet wide, but it has been widened over the years. The widened road is still within the boundaries of the Easement. Many of the landowners who use the Easement are parties to a certain contract that governs their respective responsibilities regarding the maintenance and improvements to the road within the Easement (the "Driveway Maintenance Agreement"). The Stinsons and their predecessors in interest chose not to enter into the Driveway Maintenance Agreement.

The controversy in this case appears to have begun in December 2008, when Mr. Stinson came to believe that the Sabols had stolen some of his chickens that wandered over to the Sabol property. Mrs. Sabol received a handwritten letter from Mr. Stinson in her mailbox stating the following:

> Your [sic] a theft [sic]. My checken [sic] have made it over to your house. You never came and told me so you caught them and keep [sic] them now I'm pisst [sic]. Your [sic] not a good neighbor and your [sic] on my [s—t] list.

Apparently angry over the chicken incident, the Stinsons thereafter began to harass the Sabols and the Mensels. The Stinsons' behavior that followed ranged from petty to outright dangerous. Mr. Stinson began to constantly put things in or around Captain Spence Ridge Road and otherwise within the Easement. He placed debris in the Easement on several occasions, as well as fence posts that were apparently designed to keep people from driving on the Easement. When the Mensels attempted to put survey tape on the posts to warn their houseguests of the presence of the posts, Mr. Stinson

2

promptly removed the tape. Mr. Stinson also dug a ditch in the roadway that required drivers to drive more on the Sabols' side of the road. Then, when a flood came in May 2010, the ditch forced unusually high water and mud down the driveway, resulting in a considerable amount of erosion.

There were also numerous altercations and screaming matches between the Stinsons and the Defendants. The police were called on several occasions. When the Mensels went to speak with Mr. Stinson about removing the fence posts, Mr. Stinson said that he had been to the courthouse and had taken steps to reduce the size of the Easement. This was not true. During the discussion, Mr. Stinson became loud, threatening and intimidating. Mr. Stinson was often described during the trial as aggressive and hostile. In 2009, Mr. Sabol was clearing weeds on Captain Spence Ridge Road when Mr. Stinson became angry and told him he could not remove the weeds. Mr. Stinson then cut brush and left the brush on Captain Spence Ridge Road. He subsequently erected a sign telling the Sabols to stay on their side of the Easement. Those passing through the Easement would routinely have to drive around the brush put in place by Mr. Stinson in order to prevent it from scraping their vehicles. Mr. Sabol frequently removed the brush, and Mr. Stinson would replace it. On one occasion, Mr. Mensel was working on the Easement when Mr. Stinson attempted to call out to him and talk to him. Mr. Mensel was wearing protective earmuffs and could not hear Mr. Stinson. Mr. Stinson apparently thought Mr. Mensel was intentionally ignoring him, so Mr. Stinson picked up a large rock and began following Mr. Mensel down the road. The situation was eventually diffused when Mr. Sabol stepped out into the road so that Mr. Stinson could note his presence. Shortly thereafter, Mrs. Stinson arrived at the Sabols' home and began to verbally accost Mrs. Sabol.

More chaos followed. Mr. Stinson continued his antics of throwing brush onto the Easement, and at one point Mrs. Stinson went so far as to throw her body in front of a bulldozer that the Mensels had hired to grade the Easement. The police were called again and again. These theatrics culminated in a lawsuit filed by the Stinsons against the Mensels and Sabols. On October 25, 2012, the Stinsons filed a complaint against the Mensels and Sabols claiming that they had caused the easement to be graded and bulldozed, encroached onto the Stinsons' property, and made verbal threats and used intimidation in order to prevent the Stinsons from coming onto or using the easement. The Mensels and Sabols filed an answer and counter-complaint on December 19, 2012. They denied making any threats or intimidating the Stinsons and alleged that the opposite was actually true.

The case was tried before a judge sitting without a jury on August 10 and 11, 2015. On January 6, 2016, the trial court entered an extensive memorandum and order dismissing all of the Stinsons' claims against the Sabols and Mensels and holding the

Stinsons liable to the Sabols and Mensels for nuisance, invasion of privacy, and intentional infliction of emotional distress. The court further enjoined the Stinsons from forever "using, driving on, damaging, or interfering with Captain Spence Ridge Road, or the maintenance of the same," and from harassing the Mensels and Sabols. On February 5, 2016, the Stinsons filed a motion to alter or amend the trial court's judgment, alleging error in some of the court's factual and legal conclusions, as well as asserting that the trial court was "without authority to virtually divest the Plaintiffs from the ability to use or be upon their property that is part of the subject easement." The Mensels and Sabols also filed a post-judgment motion to clarify and amend the trial court's January 6, 2016 order, but only to generally correct a misspelling and some other inadvertent errors. On February 25, 2016, the trial court approved the corrections suggested by the Mensels and Sabols and entered an amended memorandum and order, which republished the original order with the changes incorporated. On March 6, 2016 the trial court denied the Stinsons' motion to alter or amend. The Stinsons timely appealed the trial court's judgment to this Court.

## II. ISSUES PRESENTED

The Stinsons present the following issues, as slightly reworded, for review on appeal:

1.      Whether the trial court erred in finding the Stinsons liable to the Mensels and Sabols for nuisance?

2.      Whether the trial court erred in finding the Stinsons committed the tort of invasion of privacy?

3.      Whether the trial court erred in finding the Stinsons committed the tort of intentional infliction of emotional distress?

4.      Whether the trial court erred in permanently enjoining the Stinsons from coming onto, using, driving on, damaging, or interfering with Captain Spence Ridge  Road for the entire 50-foot width of the Easement, or the maintenance of the same?

## III.    STANDARD OF REVIEW

This case was tried by the trial court without a jury. We therefore review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Also, because the trial court has the opportunity to observe the

demeanor of the witnesses and hear the in-court testimony, we afford considerable deference to the trial court's credibility determinations and the weight given to oral testimony. *Andrews v. Andrews*, 344 S.W.3d 321, 339 (Tenn. Ct. App. 2010). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hyneman v. Hyneman*, 152 S.W.3d 549, 553 (Tenn. Ct. App. 2003).

## IV. DISCUSSION

We begin our discussion by noting that there appears to have been a fair amount of confusion and disagreement between the parties as to the nature of the ownership and rights each has in the Easement. In their answer and counter-complaint, the Mensels and Sabols asserted that the Driveway Maintenance Agreement "controls the maintenance of Captain Spence Ridge Road," and that the Stinsons have no Authority to do any maintenance to the road. At trial, there was testimony that pointed to Mr. Stinson's belief that the land subject to the Easement was in actuality his and his alone, and therefore he could control what transpired within the Easement.

"An easement is a right an owner has to some lawful use of the real property of another." *Cellco Partnership v. Shelby County*, 172 S.W.3d 574, 588 (Tenn. Ct. App. 2005) (quoting *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996)). There are two broad classes of easements: easements in gross and easements appurtenant. *Id.* An easement in gross is simply a personal interest or right to use the land of another that does not benefit another property. *Id.* Easements appurtenant, which is the type of easement involved in this case, involves two tracts of land, including "a dominant tenement, and a servient tenement. The dominant tenement benefits in some way from the use of the servient tenement." *Id.* In the case at hand, the Mensels and the Sabols, among others, own the dominant tenements, and the Stinsons own the servient tenement. The Easement gives the dominant tenements, the Mensels and the Sabols, the right to pass over the servient tenement, owned by the Stinsons, for purposes of ingress and egress to their own properties without being considered trespassers by virtue of their presence on the Stinsons' land.

Where the two interests intersect, the dominant and servient tenements each have restrictions on their use of an easement. As holders of the dominant tenement, the Mensels' and the Sabols' "use of the easement must be confined to the purpose stated in the grant of the easement," which is ingress and egress. *Shell v. Williams*, No. M2013-00711-COA-R3-CV, 2014 WL 118376, at *6 (Tenn. Ct. App. Jan. 14, 2014) (internal citations omitted). Furthermore, "[a] principle which underlines the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Id.* With respect to the rights of the Stinsons as owners of the servient estate, this Court has held the following:

5

Just as the owners of the dominant estate have restrictions on their use of an easement . . . so too do the owners of the servient estate. . . .

The owner of the servient estate, while he may use his property in any manner consistent with the existence of the easement, . . . cannot make any alterations to his property by which the enjoyment of the easement will be materially interfered with. . . .

The owner of the servient estate has no legal right to interfere with an easement holder's enjoyment and use of the easement.

*Id.* at *8-9 (internal citations omitted).

To be clear, the Stinsons' decision to not enter into the Driveway Maintenance Agreement does not curb their interest in the property or their ability to lawfully use and maintain the Easement. By the same token, the Stinsons cannot prohibit the dominant tenements from coming upon or making repairs to the Easement that are reasonably necessary for its express use.

## A. <u>Nuisance</u>

We now turn to the specific issues raised as error on appeal. The Stinsons first allege that the trial court erred in holding that they were liable to the Mensels and Sabols for nuisance. "A nuisance has been defined as anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Sadler v. State*, 56 S.W.3d 508, 511 (Tenn. Ct. App. 2001) (quoting *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981)). "[U]nder Tennessee law, a nuisance may arise from lawful activities where it disturbs the free use of another's property or renders its occupation unreasonably uncomfortable." *Pearson v. Ross*, No. W2011-00321-COA-R3-CV, 2011 WL 6916194 at *6 (Tenn. Ct. App. Dec. 28, 2011).

The trial court found, and the record supports, several instances where the Stinsons created a nuisance by interfering with the Mensels' and the Sabols' free and lawful use of the Easement. A non-exclusive list of the offensive behavior was chronicled by the trial court as follows:

- "There were no drainage problems on Captain Spence Ridge Road; so, there was no need for Mr. Stinson to put in the ditch. The ditch was a nuisance. In fact, the ditch actually drained the opposite way

of the slope.  Furthermore, there was no need for the brush or the posts erected by Mr. Stinson."

- "On May 18, 2011, Mr. Stinson placed debris in the road.  He also set fence posts to keep people from driving on his land.  He removed the fence posts to allow the Mensels to get a trailer off their land.  Once the trailer was removed, Mr. Stinson put the fence posts back in the ground.  The police told Mr. Stinson he needed to remove the fence posts or he would be charged with a crime.  Accordingly, Mr. Stinson has removed the fence posts."

- "Also in 2009, Mr. Sabol had tried to clear weeds from the North side of Captain Spence Ridge Road.  Mr. Stinson became angry and told him he could not remove the weeds.  Mr. Stinson cut brush on the driveway side of his fence and left a mess in Captain Spence Ridge Road.  Later he put a large, wooden hand-lettered sign telling the Sabols to stay on their side of the Easement."

- "Also, Mr. Stinson dug a trench in the roadway which forced drivers to drive more on to the Sabols' side of the road.  When the May 2010 flood hit the area, the ditch forced an unusually high amount of water and mud down the driveway hill, resulting in considerable erosion damage from the top of the hill where the ditch stopped at Ben Fly Road.  This erosion left an expanse of mud instead of gravel."

- "Once in 2009, Mr. Sabol had a confrontation with Mr. Stinson.  Mr. Sabol was weed eating on his side of Captain Spence Ridge Road approximately two feet over from tire marks.  Mr. Stinson told Mr. Sabol 'leave my side alone.'  Mr. Stinson was extremely upset. Then, Mr. Stinson began piling brush all the way down the road and never said why he was doing so.  The branches stuck out and scraped vehicles as they passed by the branches.  Mr. Sabol and others would have to drive around the brush to avoid their vehicles being scraped. Mr. Sabol would have to remove brush from the road at least once a week."

- "The ditch that Mr. Stinson dug made the water go down the road onto Mr. Sabol's driveway.  It created two to three inches of mud and washed away the gravel that the Sabols and Mensels had put on Captain Spence Ridge Road."

7

- "On August 28, 2011, Mrs. Sabol found Mr. Stinson cutting a tree into pieces that had fallen from his property onto his fence and the Easement road. Mrs. Sabol asked Mr. Stinson if he was going to remove the tree. Mr. Stinson responded 'none of your f—ng business.' Mrs. Sabol left to get a camera. When she came out of her house with the camera to take photographs of what Mr. Stinson was doing, Mr. Stinson drove away quickly. He then reversed quickly toward Mrs. Sabol as if to hit her, but stopped right before doing so and drove away. Later that day, Mrs. Stinson walked down Captain Spence Ridge Road to a spot in front of the Sabols' home and screamed and cursed for Mrs. Sabol to come out of the house."

In light of the foregoing, the court concluded the following:

> The Mensels and Sabols claim that the Stinsons' conduct amounts to intentional nuisance. The proof at trial was the Mensels and Sabols lived in their residences for years without even meeting the Stinsons. They had absolutely no problems. But, everything changed in 2008, when Mr. Stinson came to mistakenly believe the Sabols had stolen Mr. Stinson's chickens. Thereafter, both Mr. and Mrs. Stinson launched a campaign of harassment and intimidation on both the Sabols and the Mensels which lasted several years. The Stinsons interfered with the Sabols' and the Mensels' enjoyment and use of the Easement (Captain Spence Ridge Road). The Stinsons annoyed and disturbed the Mensels' and Sabols' free use of their property.

On appeal, the Stinsons argue that "there is absolutely no proof that Mr. and Mrs. Stinson interfered with the use and enjoyment of Defendants['] property" and that the Mensels and Sabols were "hypersensitive" to the Stinsons' behavior. After carefully reviewing the record, we hold that the evidence does not preponderate against the trial court's findings regarding the aforementioned incidents, and we agree that this conduct rises to the level of a nuisance. We therefore affirm the trial court's judgment that the Stinsons are liable to the Mensels and Sabols for nuisance.

## B. **Invasion of Privacy**

The trial court further held that the Stinsons committed the tort of invasion of privacy, holding:

> The Mensels and Sabols also claim the Stinsons committed the tort of invasion of privacy. To prevail on a claim of invasion of privacy, the Mensels and Sabols must show that the Stinsons engaged in conduct which:

8

intentionally intrude[ed] physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person.

*Restatement (Second) of Torts* 652B (1977); *Givens v. Mullikin*, 75 S.W.3d 383, 411-12 (Tenn. 2002).

In the instant case, Mr. Stinson placed an offensive and threatening note in the Sabols' mailbox. Mrs. Stinson went into the Sabols' yard and screamed and cussed at Mrs. Sabol and threatened her. Moreover, Mr. Stinson placed debris on Captain Spence Ridge Road, dug a ditch in the road, and removed gravel from the potholes.

In addition, Mr. Stinson followed Mr. Mensel in an offensive manner with a soft-ball sized rock held above his head. Also[,] Mr. and Mrs. Stinson obstructed the bulldozer work Contractor Lanny Clifton was doing for the Mensels. This behavior amounted to an invasion of the privacy rights of the Mensels and Sabols.

"'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.'" *Roberts v. Essex Microtel Assocs.*, 46 S.W.3d 205, 211 (Tenn. Ct. App. 2001) (quoting *Restatement (Second) of Torts § 652B*). However, this Court in *Roberts* also noted the comments to Section 652B of the Restatement (Second) of Torts, which provide:

B. **The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home**. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined.

9

C. **The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs**. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.

*Restatement (Second) of Torts* § 652B, cmt. B, C (emphasis added).

The activity described by the trial court cannot be deemed to be the basis for a claim of invasion of privacy. An essential element of an invasion of privacy claim is that the offender must have intruded upon the solitude or seclusion of another. The Mensels and Sabols cannot have reasonably expected solitude or seclusion on the land encompassing the Easement that they shared with the Stinsons and others, nor could they expect solitude or seclusion with respect to a neighbor leaving a note, as offensive as it may have been to them, in their mailbox. Even with respect to the incidents where Mrs. Stinson allegedly screamed and used profanity on the Sabols' and Mensels' property, the testimony in the record does not indicate that the Sabols or Mensels had secluded themselves in a private place, as contemplated by the Restatement.

Accordingly, we must reverse the trial court's judgment that the Stinsons committed the tort of invasion of privacy.

## C. Intentional Infliction of Emotional Distress

The trial court also found that the Stinsons were liable to the Mensels and Sabols for intentional infliction of emotional distress. In order to prevail on a claim of intentional infliction of emotional distress, "a plaintiff must prove that the defendant's conduct was either intentional or reckless, was so outrageous that it is not tolerated by a civilized society, and caused a serious mental injury to plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 201 (Tenn. 2012). According to the trial court, all three of these elements were satisfied. As to the first two elements, the trial court stated that the "Stinsons' conduct clearly was intentional. Also, the Stinsons' conduct was so outrageous that it is not tolerated in a civil society." Even assuming that these first two

10

requirements were satisfied, after careful review of the record we cannot conclude that Mr. Sabol, Mrs. Sabol, Mr. Mensel, or Mrs. Mensel presented proof that they suffered serious emotional injury required to sustain a claim for intentional infliction of emotional distress. With respect to this third element, the trial court found:

> [T]he Stinsons' conduct caused serious mental injury. Mrs. Sabol will no longer go to her mailbox or go outside unless her husband is home. Mr. Sabol and Mr. Mensel will not work on the Easement unless the other is present. Mr. Sabol was verbally attacked in his own yard. M[r]s. Mensel is afraid of both Mr. and Mrs. Stinson. The Mensels and the Sabols have suffered emotional distress.

To aid courts in determining whether a plaintiff has suffered "severe mental injury" for purposes of the tort of intentional infliction of emotional distress, the following nonexclusive list of factors is relevant to determining whether said injury exists:

> (1) Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
>
> (2) Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
>
> (3) Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;
>
> (4) Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
>
> (5) Other evidence that the defendant's conduct caused the plaintiff to suffer significant impairment in his or her daily functioning; and
>
> (6) In certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

11

*Rogers*, 367 S.W.3d at 209-10. Furthermore, in the context of intentional infliction of emotional distress, a "plaintiff may present this evidence by his or her own testimony, the testimony of lay witnesses acquainted with the plaintiff such as family, friends, and colleagues, or by the testimony of medical experts." *Id.*

There was very little consideration given to any actual mental injury in this case by either the parties or the trial court. The trial court's order is virtually devoid of any discussion or analysis of the aforementioned factors. Only a handful of questions during the two day trial of this matter related to the mental impact that this ordeal has had on the Mensels and Sabols. The testimony that was elicited at trial amounted to the Mensels' and the Sabols' general fear of engaging with the Stinsons and the precautions they have taken to ensure that they are not left alone with them. The record actually speaks more to the mental angst of the Stinsons than anyone else, as it includes the medical records of Mr. and Mrs. Stinson, not those of the Sabols or the Mensels. Although we sympathize with the hardship that the Stinsons' harassment has caused the Mensels and Sabols, the evidence preponderates against the trial court's finding of serious mental injury in this case. Accordingly, we reverse the trial court's judgment that the Stinsons are liable to the Sabols and the Mensels for intentional infliction of emotional distress.

### D. **Permanent Injunction**

After finding that the Stinsons are liable to the Mensels and Sabols for nuisance, invasion of privacy, and intentional infliction of emotional distress, the trial court imposed the following injunction:

> [T]he Stinsons are forever prohibited from coming onto, using, driving on, damaging, or interfering with Captain Spence Ridge Road for the entire 50-foot width of the easement, or the maintenance of same. The Stinsons are also enjoined from harassing the Mensels and Sabols, or interfering with their personal enjoyment of Captain Spence Ridge Road. Any reference in this Order to Captain Spence Ridge Road is a reference to the entire 50-foot wide easement known as Captain Spence Ridge Road.

Portions of this injunction essentially divest the Stinsons of any use or interest in their property that is subject to the Easement, prohibiting even lawful activity thereon. "Injunctions, however, are drastic remedies that should be used only if no other adequate relief is available." *West v. Luna*, No. 01A01-9707-CH-00281, 1998 WL 467106, at *5-6 (Tenn. Ct. App. Aug. 12, 1998) (citing *Butts v. City of South Fulton,* 565 S.W.2d 879, 882 (Tenn. Ct. App. 1977). In general, "[i]njunctions will not issue merely to relieve the fears or apprehensions of an applicant." *Wallace v. Andersonville Docks, Inc.*, 489 S.W.2d 532, 535 (Tenn. Ct. App. 1972) (internal citations omitted). "They should be

12

used sparingly if the nuisance is being created by an otherwise lawful activity, and they should be limited to the acts causing the nuisance." *West*, 1998 WL 467106, at *5-6.

Easement rights are not so great that they completely deprive the owner of the servient estate of any use or enjoyment of his or her property.

> The rights of neither party are "absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient estate." *Carroll v. Belcher*, 1999 WL 58597, at *1 (Tenn. Ct. App. Feb.9, 1999) (quoting 10 TENNESSEE JURISPRUDENCE, Easements § 6 (1994)). The rights of each party must be examined in the context of the entire situation and should be balanced so as to protect the rightful use by each party of his or her interest. *Rogers v. Roach*, No. M2011-00794-COA-R3-CV, 2012 WL 2337616, at *8-9 (Tenn. Ct. App. June 19, 2012).

> It is well settled that, because an easement is limited to the purposes for which it was created, an owner of an easement "cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Adams v. Winnett*, 156 S.W.2d at 357 (quoting 17 AM. JUR. 996, sec.98); *Shew v. Baugus*, 227 S.W.3d [569, 576-77 (Tenn. Ct. App. Feb. 20, 2007)].

> . . . .

> The owners of the land under and surrounding an easement, the servient estate, while he may use his property in any manner consistent with the existence of the easement, . . . cannot make any alterations in his property by which the enjoyment of the easement will be materially interfered with and has no legal right to interfere with an easement holder's enjoyment and use of the easement. *Charles v. Latham,* No. E2003-00852-COA-R3-CV, 2004 WL 1898261 (Tenn. Ct. App. Aug. 25, 2004)(citing *Cooper v. Polos*, 898 S.W.2d 237, 242 (Tenn. Ct. App. 1995)). *See also* 28A C.J.S. *Easements* § 175 (1996).

*Keenan v. Fodor*, No. M2012-00330-COA-R3-CV, 2014 WL 793713, at *7 (Tenn. Ct. App. 2014).

To the extent the trial court issued an injunction that prohibits the Stinsons from accessing property they own, albeit servient to the Easement, such an injunction was improper. The Stinsons cannot be "forever prohibited from coming onto, using, [or]

driving on" property they own. Since a portion of their property is, in fact, a servient estate, they can be enjoined from damaging or interfering with the Easement, including the use or maintenance of the Easement. Accordingly, we vacate the trial court's injunction with respect to the Stinsons' access and use of the servient estate.

## E. **Evidence of Assault**

After discussing the alleged errors we have analyzed above, the Stinsons' appellate brief presents a fifth issue for this Court's consideration, which states that "the trial court erred in admitting into evidence the fact that Mr. Stinson has been previously convicted of the offense of simple assault, and admitted into evidence a copy of the conviction." This "issue," however, to which the Stinsons devote less than one page of their brief, was not properly designated as an issue for our review in accordance with the Tennessee Rules of Appellate Procedure. Rule 27(a) of the Tennessee Rules of Appellate Procedure specifies that the "brief of the appellant *shall* contain under the appropriate headings and in the order here indicated . . . (4) A statement of the issues presented for review." Tenn. R. App. P. 27 (emphasis added). The statement of issues in the Stinsons' appellate brief does not at all refer to any issue regarding the trial court's admission of Mr. Stinson's conviction for assault into evidence. Our Tennessee Supreme Court has consistently held that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012). The Stinsons have waived any issue related to the evidence of Mr. Stinson's conviction for assault by failing to appropriately designate it as an issue for review on appeal in accordance with Rule 27(a)(4).

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court with respect to the nuisance claim, reverse the judgment of the trial court with respect to the intentional infliction of emotional distress claim and invasion of privacy claims, and vacate the permanent injunction against the Stinsons to the extent that it prohibits them from the lawful access and use of their property. Costs of this appeal are taxed one half against the Appellees, David E. Mensel and Mary F. Mensel, Michael Sabol and Christine Sabol, and one-half against the Appellants, Charles Stinson and Glenda Stinson, and their surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

14