Willard OAKLEY, et al.,
Plaintiffs–Appellees,

v.

Jesse A. SIMMONS,
Defendant–Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 22, 1990.

Permission to Appeal Denied by
Supreme Court Nov. 5, 1990.

---

Thomas V. White, Tune, Entrekin & White, Nashville, for plaintiffs-appellees.

Dan R. Alexander, Nashville, for defendant-appellant.

## OPINION

CANTRELL, Judge.

The defendant, Jesse Simmons, claims that the jury erred in finding that a forty foot pole erected three hundred sixty feet from the defendant's residence and directly in the flight path of a private airstrip on the plaintiff's adjoining property constitutes a nuisance and that the trial court erred in granting injunctive relief.

The plaintiffs, Willard and Alan Oakley, claim that the trial court erred in setting aside the jury award of $5,000.00 in punitive damages.

### Facts

The Oakleys' and Simmons' own adjoining land. The Oakleys have a private airstrip on their thirty-five acres. They applied for and received a conditional use permit from the Metropolitan Government of Davidson County in 1981 for a two year period subject to the following conditions: the air strip must be for private use only, and the number of flights must be no more than five per week. In reliance on the permit the plaintiffs have spent approximately $150,000.00 on improvements to their property, including construction of hangars and a runway. The runway is located in a northerly/southerly direction with the north end of the runway closest to the defendant's property. In taking off and landing from the plaintiff's runway, planes fly over the adjoining property of the defendant. The layout and direction of the runway were approved by the Metropolitan Government, the State of Tennessee, and the Federal Aviation Administration.

The plaintiffs have continuously operated the airstrip from 1981 to the present. When the plaintiffs obtained the permit in 1981, the defendant's tract was owned by Horace Demoss, the defendant's brother-in-law. While Demoss owned the property, there were no buildings or electrical poles on the property. The defendant, Mr. Simmons, acquired the property on June 17, 1987. Both Mr. Demoss and the defendant were aware of the use for which the plaintiffs maintained their thirty-five acres. They were also aware that the Oakleys used their airstrip two or three times a week.

The defendant began construction of a residence on his property in April, 1988. He chose a site near the river approximately 760 feet from the road. The electrical lines for the residence could have run either down the south side (the plaintiffs' boundary) or the north side of the defendant's land, but the defendant insisted on running those lines down the south side. The electric utility company refused to run the lines down the south side of the property due to the flight pattern from the airstrip. Instead, the utility company stated that it would approve underground cables on the south side which would be at a greater cost. At trial the plaintiffs testified that they had offered to pay a portion of the cost for running the electric cables underground. But the defendant would

not consider the underground lines and had the lines installed along the northern boundary of his property.

During this time, the Metropolitan Government informed the plaintiffs that their flight permit had expired. Although the permit had expired in 1983, through inadvertence neither the Metropolitan Government nor the plaintiffs followed up on the renewal. When the plaintiffs were contacted about the expiration of their permit, they promptly submitted all the appropriate information to the Board of Zoning Appeals. The only person expressing opposition to the renewal was the defendant. The Board of Zoning Appeals voted unanimously to grant the conditional use permit for an additional ten year period subject to the original conditions.

Despite the Board's approval of the airstrip and the placement of the electrical lines, the defendant erected a single pole, forty feet high, immediately adjacent to the plaintiffs' property and in the direct path of the north/south runway. The defendant stated that this single pole would be used as a light pole, but the pole was located approximately three hundred sixty feet from the residence and four hundred feet from the road. On May 6, 1988, the defendant also indicated that he intended to plant two fifty foot trees on either side of the pole.

The plaintiffs filed suit on May 16, 1988, taking the position that the defendant's desire to use the pole as a light pole was inconsistent with the three hundred sixty foot distance from the house, the height of the pole, and the strategic location of the pole. The plaintiffs requested that the court declare the defendant's pole a nuisance, order the defendant to remove the pole, enjoin the defendant from erecting further obstacles, and award compensatory and punitive damages.

At trial, the jury found that the pole erected by the defendant was a nuisance. The jury awarded no compensatory damages but awarded $5,000.00 in punitive damages. The issue of injunctive relief, which the trial court was to determine, was taken under advisement. By Memorandum Opinion dated December 5, 1989, the trial judge set aside the $5,000.00 award for punitive damages but concluded that the appropriate relief for the plaintiffs was removal of the pole.

### Nuisance Claim

A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable. *Caldwell v. Knox Concrete Products, Inc.*, 391 S.W.2d 5, 54 Tenn.App. 393 (1964). It extends to everything that endangers health or life, offends the senses, or obstructs the reasonable and comfortable use of property. *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn.1981). If placing a pole or obstruction near the property line of the airstrip is found to be solely for the purpose of harassing the airstrip owner, and is not a reasonable use of the property, it would constitute a nuisance. *See Reaver v. Martin Theatres of Florida*, 52 So.2d 682 (Fla. 1951).

We agree that there is material evidence in this case to support the jury's verdict that the pole erected by the defendant is a nuisance. The forty foot pole directly in the flight path created a significant safety hazard for the plaintiffs. In contrast, the defendant's interest in erecting the pole is not compelling. The pole is forty feet tall and is three hundred sixty feet from the defendant's residence. We feel that the defendant can relocate and shorten the pole so that he still can use it for lighting purposes and yet will not interfere with plaintiffs' flight pattern.

Moreover, there is a Tennessee statute supporting the jury verdict and the trial court's injunction concerning further obstacles to the plaintiffs' flight pattern. Tenn.Code Ann. § 42–1–104 (1989) provides that:

Flight in aircraft over the lands and waters of this state is lawful unless at such a low altitude as to interfere with the *existing use* to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous

to persons or property lawfully on the land beneath....

(Emphasis added.) *Id.*

The defendant knew when he bought his land that the plaintiffs used their property as an airfield. Furthermore, the defendant's property had no construction or lighting poles of any kind when the plaintiffs constructed their airfield. Thus, the existing use of the defendant's property was not affected by the plaintiff's airstrip.

### Punitive Damages

An interesting question is presented in this case as to whether punitive damages can be awarded when compensatory damages are not awarded. The trial court cited *Emerson v. Garner*, 732 S.W.2d 613 (Tenn. App.1987) as authority for setting aside the $5,000.00 punitive damages award. In *Emerson*, a defamation case, the Western Section of this court discussed a long line of cases holding that actual damages must be awarded before punitive damages can be assessed. The court concluded that the rule quoted in 25 C.J.S. Damages § 18, "In general where there is a finding that no actual damages have been sustained or suffered, exemplary damages cannot be awarded", was the rule followed in this state. *Id.* at 615.

The courts have not clearly articulated what is meant by the "actual damages" requirement. In at least one case the court upheld an award of punitive damages where the judgment did not contain an award for compensatory damages. In *Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241 (Tenn.1977), the plaintiff did not prove any damages at trial because the defendant had restored the damaged property to its original condition. Nevertheless, the court found that the fact of actual damage had been clearly demonstrated and upheld an award of punitive damages.

In another case, *Hutchison v. Pyburn*, 567 S.W.2d 762 (Tenn.App.1977), this court upheld an award of punitive damages in an action for rescission of a contract to sell real estate and hinted that the requirement of actual damages means only that the plaintiff must prove that he has been legally injured in some way. 567 S.W.2d at 764. The court cited *Allen v. Melton*, 20 Tenn. App. 387, 99 S.W.2d 219 (1936), as suggesting that an award of punitive damages requires only proof that the plaintiff has a valid cause of action.

We are of the opinion that the rule so long recognized in Tennessee is, as this court in *Hutchison* suggested, "really a roundabout way of saying that there can be no cause of action for punitive damages alone." 567 S.W.2d at 765. Where the plaintiff has proved an entitlement to injunctive relief, an award of punitive damages may be upheld without an award of compensatory damages.

Because we believe that the plaintiffs in this case were legally injured as in *Whittington* and *Hutchison*, we restore the jury's award of punitive damages.

The judgment of the court below is affirmed in part and reversed in part and the cause is remanded to the Davidson County Chancery Court for any further proceedings necessary. Tax the costs on appeal to the appellant.

LEWIS and KOCH, JJ., concur.