IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2025 Session

## JEFFREY HEATLEY ET AL. v. ESTATE OF DAVID G. GAITHER ET AL.

Appeal from the Chancery Court for Putnam County
No. 2022-135          Ronald Thurman, Chancellor

————————————————————

No. M2024-01097-COA-R3-CV

————————————————————

Appellants have filed three related lawsuits against appellee and other entities. Here, appellants claim a continuing nuisance stemming from the alleged discharge, onto appellants' property, of e. coli-contaminated wastewater from a dismantled septic system, which previously serviced appellee's property. In a previous appeal, this Court affirmed the grant of summary judgment to the appellees on appellants' claim of trespass based on our finding of an existing easement appurtenant for the septic system. As relevant here, the trial court granted appellee's motion for summary judgment on appellants' claim of nuisance, and they appeal. Because appellants have failed to meet their burden of proof, at the summary judgment stage, to show that there is leaching of contaminated wastewater onto their property, they have failed to establish the existence of the nuisance averred in their complaint. Accordingly, we affirm the trial court's grant of appellee's motion for summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the appellants, Jeffrey Heatley, and the Estate of Kathryn Heatley.

Douglas L. Dunn, Knoxville, Tennessee, for the appellee, Patricia W. Gaither.

Gaither's Inc., and Estate of David G. Gaither, McMinnville, Tennessee, appellees, pro se.[1]

---

[1] On January 15, 2025, this Court entered an order, stating, in relevant part:

[It] has come to the Court's attention that the clerk's case management system contained

# OPINION

## I. Background

This is the third appeal of this case. A detailed recitation of the background facts is contained in ***Heatley v. Gaither, et al.***, No. M2018-00461-COA-R3-CV, 2018 WL 6706287 (Tenn. Ct. App. Dec. 19, 2018) ("***Heatley I***"). Jeffrey Heatley and his wife, Kathryn, owned property located next to property owned by David Gaither and his wife, Patricia Gaither ("Appellee"). Mrs. Heatley and Mr. Gaither are now deceased. The Gaither and Heatley properties were originally one parcel, which was owned by Melvin and Anna Malone. In the late 1960s, the Malones installed an underground sewage disposal system that included two septic tanks. Almost thirty years later, the Malones subdivided their property. As a result, the Malone house was located on what would become the Gaither property, and part of the house's septic system was located underneath what would become the Heatley property. After purchasing their property, the Gaithers renovated the old Malone house for use as a mental health adult supportive residential facility. In the fall of 2011, with the approval of the Tennessee Department of Mental Health, Skylar House opened for business.

In October 2013, the Heatleys notified David Gaither that they had uncovered a clay pipe on their property that led to the Gaither property. The parties subsequently discovered that the pipe connected Skylar House, on the Gaither property, to the septic tank on the Heatley property. Mr. Gaither had the newly discovered tank emptied on November 4, 2013, and he applied for the necessary permit to disconnect the tank. The septic line was permanently severed and sealed under the supervision of the Tennessee Department of Environment and Conservation ("TDEC") on or about February 21, 2014.

---

incorrect information regarding the two appellees' counsel.

> The Estate of David G. Gaither and Gaither's Inc. are not represented by counsel, but the case management system indicates they are represented by Douglas Lee Dunn, counsel for the other appellee, Patricia Gaither. . . . The error is mitigated by the fact the appellant is not raising any issues related to The Estate of David G. Gaither and Gaither's Inc., and the two appellees appear to have no interest in the appeal.

Although given the opportunity to file responsive briefs, neither The Estate of David G. Gaither, nor Gaither's Inc. have done so. Regardless, as this Court previously noted, the issues raised in this appeal do not relate to these entities. Indeed, the order granting summary judgment to Ms. Gaither specifies that, "This Court's rulings granting Gaither's Motion for Summary Judgment dismisses all Plaintiffs' claims against Defendant Patricia W. Gaither only." The trial court's order goes on to state that, "This Court finds that there is no just reason for delay of entry of a final judgment as to Patricia W. Gaither and expressly directs that this Order shall be a final judgment pursuant to TRCP 54 dismissing all Plaintiffs' claims against Defendant Patricia W. Gaither." As such, we will proceed in this appeal as if Patricia W. Gaither is the sole appellee.

On January 23, 2014, before the tank was permanently disconnected, the Heatleys filed their first action against David and Patricia Gaither and two related entities, Gaither's Inc. and Generations-Gaither's Inc., in the Chancery Court for Putnam County, Tennessee ("trial court"). The complaint alleged that sewage or wastewater was continuously leaking from the septic tank onto Appellants' property. Among other things, the Heatleys asserted claims for negligence and trespass. According to the Heatleys, even after the septic line was permanently disconnected, the tank continued to leak, apparently from contents that had accumulated after the tank was emptied but before the line was permanently severed. The trial court granted summary judgment in favor of the defendants, and the Heatleys appealed to this Court.

In ***Heatley I***, we held that: (1) an easement to use the septic system arose by implication from the previous common ownership; (2) the Gaither property, the dominant tenement, benefitted from using the septic system on the Heatley property, the servient tenement; (3) this was an easement appurtenant, and it ran with the land; and (4) the easement bound the Heatleys even though they purchased their property without knowledge of the easement. ***Heatley I***, at \*4 (citations omitted). In ***Heatley I***, we affirmed the trial court's grant of summary judgment on the trespass claims but vacated the grant of summary judgment on the negligence claims. In vacating that portion of the trial court's order, we noted that the "Heatleys do not challenge the trial court's ruling that the Gaithers had no duty to repair or maintain the septic system on the Heatley property before October 30, 2013." ***Id.*** We further noted that the sewer line from the Gaithers' property to the septic tank on the Heatley property "was permanently disconnected on or around February 21, 2014." ***Id.*** However, because a "reasonable juror could find that sewage from Skylar House continued to flow onto the Heatley property for at least a short period after the tank was emptied," we held that a cause of action for negligence could attach for the period of October 31, 2013 through February 21, 2014.

While the appeal was pending in ***Heatley I***, the Heatleys filed a second lawsuit in the trial court. The Heatleys alleged continuing nuisance and trespass arising from the leaking septic tank. The trial court granted the Gaithers' motion for summary judgment on the ground of prior suit pending (*i.e., **Heatley I*** was still pending), and this Court affirmed the grant of summary judgment in ***Heatley v. Gaither***, No. M2018-01792-COA-R3-CV, 2019 WL 2714378 (Tenn. Ct. App. June 28, 2019) ("***Heatley II***").

Following remand in ***Heatley II***, the Heatleys filed a voluntary nonsuit on April 19, 2022. On August 24, 2022, Mr. Heatley and his Wife's Estate, *i.e.,* the Estate of Kathryn Heatley (together with Mr. Heatley, "Appellants") filed the complaint giving rise to the instant appeal. In the complaint, which was filed against the Estate of David G. Gaither, Patricia W. Gaither, Gaithers, Inc., and Generations-Gaithers, Inc., Appellants alleged claims for negligence, nuisance, and trespass.

On May 11, 2023, Generations-Gaither's, Inc filed a motion for summary judgment

arguing that "all septic tank connections between the properties was permanently severed by February 21, 2014 so there can be no liability of Generations to Heatley for negligence, nuisance and trespass as Generations was not involved until July 1, 2016 and all alleged injury to Heatleys occurred years before and no further contamination could occur from Generations." By order of November 13, 2023, the trial court granted Generations-Gaither, Inc.'s motion for summary judgment. On appeal, Appellants do not raise an issue concerning the grant of summary judgment to Generations-Gaither's, Inc., and it is not a party to the instant appeal.

On January 22, 2024, Mrs. Gaither filed a motion for summary judgment. As relevant here, Mrs. Gaither averred that: (1) "[she] did not perform any conduct that in any way established the elements of negligence or nuisance or caused any harm to [the] Heatleys"; and (2) "[A]ll septic tank connections between the properties w[ere] permanently severed by February 21, 2014 so there can be no liability of Gaither to Heatley." On February 23, 2024, Appellants filed a response in opposition to Mrs. Gaither's motion for summary judgment. By order of April 16, 2024, the trial court granted the motion for summary judgment. On May 15, 2024, Appellants filed a motion to alter or amend the order granting summary judgment to Mrs. Gaither. On July 16, 2024, the trial court entered an order denying Appellants' motion, and they filed a timely appeal.

## II. Issue

Although the trial court granted summary judgment on all of Appellants' claims, including trespass, negligence, and nuisance, Appellants appeal only the dismissal of their nuisance claim against Mrs. Gaither. Thus, the sole issue for review is whether the trial court erred in granting Mrs. Gaither's motion for summary judgment on Appellants' nuisance claim.

## III. Standard of Review

A trial court's decision to grant a motion for summary judgment presents a question of law. Therefore, our review is *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that all requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009). When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Furthermore,

> "[w]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means

- 4 -

provided in Tennessee Rule 56, "set forth specific facts" at the summary judgment stage "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* [*Ltd. v. Zenith Radio Corp*.], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015).

## IV. Analysis

As noted above, our review is limited to the question of whether the trial court erred in granting Mrs. Gaither's motion for summary judgment on Appellants' nuisance claim only. The Tennessee Pattern Jury Instructions define "nuisance," in relevant part, as follows:

A nuisance is the maintenance of a wrongful condition of one's own property [or property that one has a right to use] over an unreasonable length of time. A nuisance is not an act or failure to act or the result of a negligent or reckless act.

A nuisance is an unreasonable or unlawful use of property that results in material or substantial annoyance, inconvenience, discomfort, harm or injury to the plaintiff, to plaintiff's personal comfort or to the plaintiff's free use, possession or occupation of the plaintiff's own property.

It is not a defense to a nuisance that the defendant used great care or caution to prevent harm.

T.P.L-CIVIL 9.13 Nuisance-Definition. As set out in the comments to these instructions, A nuisance is anything which annoys or disturbs the free use of one's property or which renders its ordinary use or physical occupation uncomfortable. *Oakley v. Simmons*, 799 S.W.2d 669 (Tenn. App. 1990). Also a nuisance extends to everything that endangers health or life, offends the senses, or obstructs the reasonable and comfortable use of property. *Oakley*, *supra*; *Ardis Mobile Home Park v. State*, 910 S.W.2d 863 (Tenn. App. 1995).

To meet their burden on the nuisance claim against Appellee, Appellants must first establish that a nuisance exists on their property, and, if so, that Mrs. Gaither did some act

or engaged in some conduct to cause or maintain the nuisance. In her motion for summary judgment, Mrs. Gaither asserts that Appellants cannot prove either of these things. Specifically, she asserts:

> 1. [] Patricia Gaither did not perform any conduct that in any way established the elements of [] nuisance or caused any harm to Heatleys.
> 2. That all septic tank connections between the properties was permanently severed by February 21, 2014 so there can be no liability of Gaither to Heatley for . . . nuisance . . . .

In granting Appellee's motion for summary judgment on the nuisance claim, the trial court found, in relevant part:

> The Court finds that the undisputed material facts in the record establish Gaither's Motion must be granted on all Plaintiffs' claims of nuisance against Gaither because Gaither has negated elements of nuisance. The Court finds that the material undisputed facts in the record establish that Gaither has not done any acts or performed any conduct to cause a nuisance on Plaintiffs' property. The undisputed and unrefuted proof in the record is that the pipe leading to the septic tank was capped and permanently closed between the properties in 2014. This is based on the affidavit of Mr. Campbell (Gaither Ex. 4), undisputed evidence in Mr. Bradshaw's affidavit (Gaither Ex. 6) that Plaintiffs were present when this was done and that Plaintiffs stated that their property improved after this was done. Mr. Heatley gave a statement in the real estate listing agreement on his property that this was done and corrected (Gaither Ex. 10). In Gaither Ex 7 (Interrogatory Responses), Plaintiffs do not identify any facts or conduct by Gaither to establish how she unreasonably or unlawfully caused a nuisance or wrongful conduct on Plaintiffs' property There is no admissible proof in the record that a nuisance exists, and if it did, what's causing it and that Gaither [] caused it. Gaither has refuted an essential element of a claim for nuisance. Further, the undisputed material facts at this Summary Judgment stage establish that there is no ongoing or continuing contamination onto Plaintiffs' property and there are no facts to find that Gaither had performed any act by the use of its property or otherwise that caused any harm to or caused adverse conditions that may exist on Plaintiffs' property, thus negating essential elements of nuisance. The Court finds that there are undisputed facts that Plaintiffs' claims of harm or damage were not from any actions by Gaither and that Plaintiffs cannot prove the elements of nuisance.

From our review of the summary judgment record, we agree with the trial court's analysis. It is undisputed and the law of the case that: (1) "the Gaithers had no duty to repair or maintain the septic system on the Heatley property before October 30, 2013."

***Heatley I***, at \*4; and (2) the sewer line from the Gaithers' property to the septic tank on the Heatley property "was permanently disconnected on or around February 21, 2014." ***Id***.[2] Nonetheless, Appellants assert that "the environmental nuisance originating on Gaither's property was never adequately remedied, the nuisance condition of contamination was never abated, and Mr. Heatley continues to be adversely affected by the nuisance to this day." Specifically, as set out in the complaint, the Appellants aver that

> sewage surfaces, pools, and flows onto the [Heatleys'] property. The human waste has sickened the [Heatleys'] animals and pollutes their soil. The "swamp like" conditions caused by the sewage threatens the health and safety of the [Heatleys], their guests, and their animals.

The complaint goes on to state that:

> 25. The Heatleys met with Mr. Dan Dodson, the laboratory manager at Tennessee Technical University Water Resource Center Lab. The Heatleys, following collection protocol, collected water and soil samples from their backyard into sanitized bottles. Per protocol, the Heatleys sealed the samples in Ziploc bags, iced them, and returned them to the lab the same day.
>
> 26. The lab report indicated exceedingly high E. Coli and total Coliform colonies. These bacteria counts demonstrate fecal pollution. The numbers on the report were literally, off the chart, with a count "greater than" 2,400 CFU, which was too high for the lab to measure. To understand these extreme levels, Tennessee Water Quality Regulations require the quarantine of a recreational waterbody, such as a lake, when E. Coli levels exceed 126 CFU.[3]

---

[2] As explained by the Tennessee Supreme Court in ***Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd***., 975 S.W.2d 303, 306 (Tenn. 1998):

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication.

[3] In their responses to Mrs. Gaither's interrogatory question: "State and provide each . . . fact . . . upon which you rely to support . . . each of your claims or causes of action against Patricia W. Gaither to establish how [she] harmed you for . . . Nuisance . . . and your allegations that [nuisance is] continuing and ongoing," Appellants' state, in relevant part: "The **gutter system** of the Skylar House facility directs water downhill onto the [Appellants'] property, serving as one of the sources of the accumulating water and waste matter. The Defendants have left the failed system in place and refused to disconnect their pipe to it while the system and its lines continued to leak onto the [Appellants'] property" (emphasis added). We are somewhat confused by Appellants' reference to a "gutter system." The only averments in the complaint

In short, Appellants argue that the septic tank was not properly capped and continues to leach contaminated wastewater onto their property. Appellants contend that the alleged nuisance can be remedied only by removal of the old tank and all lines associated with it. Based on the averments made in the complaint, Appellants have the burden to show that an ongoing nuisance exists because the sewage disposal system, despite being dismantled, continues to leach e-coli-laden wastewater onto Appellants' property. From our review, aside from the averments made in the complaint and in Mr. Heatley's own declaration, Appellants have not provided any proof to support their contention.

In contrast, Mrs. Gaither has provided evidence to support her position that there is not a continuing nuisance on the Appellants' property caused by any remaining problems with the septic system. In his affidavit filed in support of Mrs. Gaither's motion for summary judgment, James Campbell, the Director of Operations for Gaither's, Inc. at the time the septic system was capped, stated, in relevant part:

> [M]y contractor applied to TDEC for a permit to install a new system on the Skylar House property and as part of the repairs, to disconnect the line to Unknown Tank.
>
> I was informed by David Bradshaw of TDEC that TDEC would issue a notice of violation to my Employer because of Unknown Tank and I understood that I and the contractor could not take any further action to replace or disconnect Unknown Tank without specific approval of each step from TDEC. Gaither's and I worked closely with TDEC, obtained a TDEC approved design for a septic system including permanently disconnecting the line to Unknown Tank and the design was installed on February 21, 2014. Actions taken by my Employer after November 6, 2013 were under the supervision of and with approval of TDEC.

In his affidavit, filed in support of Mrs. Gaither's motion for summary judgment, David S. Bradshaw, Environmental Specialist III for TDEC, stated that he was present and performed the final inspection on February 21, 2014 including digging up and permanently disconnecting the septic tank line from Skylar House to the Heatley property. In an attached Field Activity Report dated February 13, 2014, Mr. Bradshaw wrote: "Also had them dig up tight line leading to the Heatley's property that had previously been disconnected. . . . The Heatley's were present when line was dug out and said that their side has dried up considerably since the line was disconnected."

Furthermore, in 2015, the Heatleys listed their property for sale with real estate

---

regarding the source of the alleged nuisance concern the septic system. So, to the extent the Appellants claim any nuisance arising from a "gutter system," such averment was not set out in the complaint, and we will not address the "gutter system" theory in this opinion as it was not properly raised in the trial court.

agent, Elaina Morgan. Mrs. Gaither provided an excerpt from Ms. Morgan's deposition along with a Tennessee Residential Property Condition Disclosure ("TRPCD"), which Ms. Morgan testified was completed and signed by the Heatleys. As relevant here, in response to the question of whether the Seller is "aware of any defects/malfunction in" the "plumbing system," the "No" box is checked. In addition, the TRPCD contains a handwritten notation, which Ms. Morgan testified was made either by Mr. Heatley or Mrs. Heatley. The notation was made in response to the TRPCD question concerning whether there are "[a]ny lawsuit(s) or proposed lawsuit(s) by or against the seller which affects or will affect the property?" In response, the "Yes" box is checked with a reference to the written notation, which provides: "Found out on 10-30-13 that neighbors to left rear had their septic system on our property. Since that time it has been disconnected and the matter is being resolved for future owners." From their disclosures, it appears that, after the septic system was capped and, according to Mr. Bradshaw's affidavit, the line from Skyler House to the tank was actually removed from the ground, the Heatleys were satisfied that the septic tank problem had been remedied such that they did not have an obligation to disclose any existing issues with the plumbing system.

Indeed, in their response in opposition to Mrs. Gaither's motion for summary judgment, Appellants "acknowledge the old septic tank connected to all the Defendants' property was properly disconnected in 2014." However, in the response, Appellants assert continuing nuisance, to-wit:

> However, the Heatley properly still has contaminated wastewater running all over the property from the area of the old septic tanks that were connected to all the Defendants' properly.

> Mr. Dave York, a plumber and project manager from Mr. Rooter Plumbing of Crossville went to the Heatley property on 13 February 2024, to determine the source of the water. While at the Heatley property, Mr. York personally observed, photographed, and videoed water pouring across the Heatley Driveway. . . . Mr. York and his staff returned to the Heatley property on 20 February 2024, with backhoe and the necessary cameras [to] inspect the old septic tank to determine if it was causing the contaminated wastewater to run all over the Heatley property. As stated above, the old septic tank was properly disconnected, but the water Mr. York observed on 13 February 2024, had to be coming from somewhere.

> Upon digging around the area where Mr. York observed the water pouring out a week prior, he discovered an old pipe that came from the leach fields of all the Defendants' old septic tank. The contaminated soil from the leach fields is too deep to be disinfected by sunlight; therefore, it remains in the soil. Whenever water soaks the leach fields, from either rain or melting snow, the water in that contaminated soil travels down the pipe Mr. York

discovered from the leach fields and pours onto the Heatley driveway.

> The only way to stop this continuing nuisance is to dig out the pipe that leads from the old septic tank's leach fields and travels further down the Heatley property. The only way to remove the contaminated soil is to dig all the soil from around the leach fields and replace it with uncontaminated soil.

In support of the foregoing averments, Mr. Heatley filed two declarations. In his first declaration, which was made on August 23, 2020, Mr. Heatley states, in relevant part,

> [t]hat the Defendants did empty the septic tank on my property once in November, 2013. However, the Defendants continued to use the septic tank for a period of time after they initially emptied it and it now has 1,000 gallons of human feces and waste in it which is leaking out every time it rains. . . . That every time it rains more of the waste bubbles to the surface and flows with the rain water across my property. . . . That the soil on my property is contaminated with human feces and E. coli and other harmful bacteria which makes my property unusable and unsaleable.

In his second declaration, which was made on October 3, 2023, Mr. Heatley states, in relevant part:

> That the septic tank which exists on my property which serves my neighbors' property adjoining my property, which is at a higher elevation than mine, was never removed by Defendants or completely cleaned out. The leach lines were not properly capped because they continue to discharge waste toward my property. . . . That I know this because I have physically seen the ends of the leach lines of the septic tank and because I have had the ground and water on my property tested on many occasions since 2014 and the levels of e. coli and other bacterial contaminants remain at impermissively [sic] and excessively high levels based on the testing at Tennessee Technological University. The levels remain excessively high, and the only source can be from the Defendants' property. . . . The same conditions that existed in 2013 continue to this day. . . . The Defendants did not remove the leach lines. They only poured a bag of concrete at the end of them which did not seal the leach lines. They have not remediated the nuisance conditions on my property which they created. . . . The Defendants' constant discharge of bacteria-laden, e. coli, and other human waste and its byproducts onto my property interferes with my use of my property and causes a health hazard for me and my animals.

From Appellants' averments, the alleged discharge of contaminant-levels of e. coli onto their property from the septic system is the only basis for their ongoing nuisance claim.

- 10 -

Therefore, Appellants have the burden of proof to show such contamination. Notwithstanding the contents of the TRPCD, *supra*, wherein Appellants stated that the issue with the waste disposal system had been remedied such that there would be no nuisance to potential buyers of the Heatley property, in defending against summary judgment, Appellants take the opposite position. In support of their current position that wastewater discharge continues to adversely affect their property, Appellants tendered Mr. David York's declaration, wherein he stated that, "upon inspection, I observed that the old septic tank was filled in with dirt and there were no active lines connected to it." Mr. York goes on to explain that, "as [he] began digging around the area where [he] saw the water on 13 February 2024, [he] located an old cement pipe," which he observed led "to the leach fields of the old septic tank that used to be connected to the [Gaither] property." Concerning any contaminants, Mr. York stated that "the e-coli in and around the top part of the soil around leach fields becomes disinfected by the sun over time," but "the e-coli in the deeper soil of the leach fields, which does not receive sun exposure, remains in the leach field's soil." Mr. York opined that, "when it rains or snows, the water from the leach fields travels down the old pipe that [he] discovered and dumps water all over Mr. Heatley's property." Appellee objected to Mr. York's declaration on the ground that it was not admissible evidence because it contains opinions and conclusions on issues that required expert testimony, and the declaration was silent as to Mr. York's qualifications. In its order granting Mr. Heatley's motion for summary judgment, the trial court found that Mr. York was "not qualified to state the opinions and conclusions contained in declaration because those require expertise under Rules of Evidence 702 and 703." As such, the trial court concluded that it that it would "not consider [Mr. York's] declaration as part of the [summary judgment] record." Appellants do not appeal this portion of the trial court's ruling, so Mr. York's declaration is of no evidentiary effect. That being said, we note that, although Mr. York explained how e-coli is dissipated through sun and soil, he did not opine that unacceptable amounts of e-coli were found on the servient portion of the Heatley property, which is the gravamen of the nuisance question.

In addition to Mr. York's declaration, Appellants filed the declaration of Mr. Dan Dodson. As set out in their complaint, *supra*, Appellants averred that Mr. Dodson performed testing on water and soil samples taken from the Heatley property and found that the e-coli concentration was "off the chart." Mr. Dodson's declaration does not support this averment. In its entirety, the declaration provides:

> I, Dan Dodson, being over the age of 18 state the following under penalty of perjury:
>
> 1. I am the laboratory manager at the Tennessee Tech Water Center Laboratory. I have a master's degree in chemistry. I have managed this lab for many years and I supervise testing performed by this lab. That testing includes testing samples for E. coli and Total Coliform.
> 2. E. coli bacteria are from the intestine of a warm-blooded animal because

- 11 -

that bacteria proliferate in the intestine due to temperature (97-98 deg F) and food source necessary for bacterial growth. Once the bacteria are removed from this environment, E. coli concentration would be expected to decrease over time as the necessary conditions for growth no longer exist that favor the proliferation of E. coli bacteria;

3. Since ambient conditions no longer provide the necessary conditions for E. coli growth, E. coli concentration would be expected to decrease over time;

4. E. coli bacteria is a type of Coliform and Coliform bacteria may be present without E. coli being present. Testing performed in my lab cannot differentiate between animals or humans as the source of E. coli present.

Mr. Dodson's declaration is of no help to Appellants' case; although he cogently explains the life phase of e-coli, he says nothing about testing soil and water samples from Appellants' property. So, like Mr. York, Mr. Dodson's declaration does not provide any proof that unacceptable e-coli concentrations exist on Appellants' property. Furthermore, from our review, Appellants did not tender a lab report or synopsis from Mr. Dobson to support their contention that toxic levels of e. coli exist on their property.

On the other hand, in response to Appellants' reply in opposition to her motion for summary judgment, Mrs. Gaither filed the declaration of Shane Buck, who stated that he is a "plumber and much of that work includes septic tank installation, cleaning and maintenance." Mr. Buck also stated that, since 2014, he has been licensed by TDEC "to clean and service septic tanks and septic systems." Mr. Buck further explained that he went

to Mr. Heatley's property in November 2019. At that time, my crew and I were directed to a site to excavate and access a septic tank. The location of the tank appeared to be a normal yard. I did not detect any odor of sewage or other odor that I associate with a leaking or overflowing septic system. I have serviced many leaking septic systems and on Mr. Heatley's property, I did not see anything at the site that made me think that there was contamination from a leaking septic system. My crew dug down approximately 3-4 feet of soil to access the septic tank. It was not full of liquid and the tank and system appeared not to have been used for a long time. The septic tank was a concrete rectangle approximately 6 feet deep inside. There was solid matter and some liquid covering it in the bottom of the tank but that is always the case because that is the way the tank is designed to work. We pumped out the contents as best we could and it took much less time than if the tank had been a full tank. After that, we used heavy equipment to crush and collapse[] most of the concrete tank into the remaining structure and footprint of the tank and buried all of that approximately 6 -10 feet deep. We also dug up 10-15 feet of the outflow pipe leading from the tank to the field lines, turned the soil and restored the

ground. The remaining old field lines were left in their existing locations approximately 3-4 feet below the surface, buried much deeper than the 2 foot depth under current regulations. Under old regulations, those lines could be buried much deeper than today. . . . When I and my crew left the site, in my opinion, that system was permanently dismantled, there was no way the tank would hold liquid and there was no way for liquid to access the field lines because the output line had been removed and the lines were plugged by dirt . . . .

Mr. Buck's declaration establishes that the septic system was "permanently dismantled" to the point that "there was no way the tank would hold liquid" such that "liquid [could] access the field lines." Aside from the averments contained in the complaint and those contained in his own declaration, Mr. Heatley has not shown that wastewater is seeping from the leach field of the dismantled septic system, much less that such wastewater has contaminated his property with e. coli. Again, at the summary judgment stage, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must "set forth specific facts . . . showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (citing Tenn. R. Civ. P. 56.06). "The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* In the absence of any evidence to support their averment that e. coli laden wastewater continues to leach onto their property, Appellants failed to meet their burden of proof to show the existence of a nuisance as averred in the complaint.

Having determined that Appellants failed to show the existence of a nuisance, we pretermit discussion of Mrs. Gaither's role, if any, in the dealings with the offending waste disposal system.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order granting Mrs. Gaither's motion for summary judgment. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellants, Jeffrey Heatley and Estate of Kathryn Heatley. Execution for costs may issue if necessary.

_s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE
